# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00502-CV

McLane Company, Inc. and McLane Foodservice-Lubbock, Inc., Appellants

v.

Carole Keeton Strayhorn, Comptroller of Public Accounts of the State of Texas, and Greg Abbott,[1] Attorney General of the State of Texas, Appellees

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT
NO. GN104253, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

## **O P I N I O N**

---

[1] This appeal was originally filed in the name of the previous attorney general of Texas. We have substituted the current attorney general of Texas. *See* Tex. R. App. P. 7.2(a).

This case involves the administration of the Cigarette Recovery Tax Fund (Athe Fund@), a private trust established to secure payment of cigarette taxes and managed by appellee Carole Keeton Strayhorn in her official capacity as Comptroller of Public Accounts. *See* Tex. Tax Code Ann. ' 154.051 (West 2002). Appellant McLane Company[2] is the State=s largest cigarette distributor. Dissatisfied with the Comptroller=s decision to reject an irrevocable letter of credit as collateral for its cigarette taxes, McLane filed suit. The Comptroller filed a plea to the jurisdiction and a motion for summary judgment. The district court granted the Comptroller=s plea in part, denied it in part, and granted the Comptroller=s motion for summary judgment, thus disposing of McLane=s suit. On appeal, McLane argues that the district court had jurisdiction under the tax code, the Uniform Declaratory Judgments Act, and section 1983 of the United States Code. For reasons that follow, we conclude that McLane=s suit is barred by sovereign immunity and we modify the district court=s judgment in part, and affirm as modified.

**Procedural and Factual Background**

---

[2] Two companies sued the Comptroller: McLane Company, Inc. and McLane Foodservice-Lubbock, Inc. We will refer to them collectively as AMcLane.@

Cigarette distributors in Texas are liable for paying cigarette taxes to the state and must affix a stamp to each cigarette package that shows the tax has been paid; the stamps are sold by the Comptroller. *See id*. '' 154.001(18), .021, .022, .041, .043 (West 2002). In exchange for Athe service of affixing stamps to cigarette packages,@ distributors are entitled to three percent of the stamps=face value, a Astamping allowance.@ *Id*. ' 154.052(a) (West 2002). A distributor must pay for its stamps in advance unless it participates in the Fund or pledges sufficient collateral. *Id*. '' 154.050(b), .051(c), (o) (West 2002). A distributor participates in the Fund by establishing an account with the Comptroller, contributing its stamping allowance until the account balance equals twenty percent of its monthly stamp purchases, at which time the distributor=s Fund interest Abecomes vested,@ and thereafter maintaining a twenty-percent balance in the Fund. *Id*. ' 154.051(c).[3] In lieu of prepayment or Fund participation, a distributor may pledge Asufficient collateral@ in the form of Acertificates of deposit, treasury notes, treasury bills, or other similar types of collateral acceptable to the comptroller.@ *Id*. ' 154.051(o).

McLane has participated in the Fund since October 1987. On April 25, 2001, it notified the Comptroller of its intent to pledge an irrevocable letter of credit in lieu of participating in the Fund and sought to have its stamping allowance refunded and to continue to obtain stamps without advance payment. The Comptroller refused to accept an irrevocable letter of credit because it Adid not afford the State with the appropriate protection against nonpayment of taxes.@ The Comptroller advised McLane that section

---

[3] Until a distributor=s interest in the Fund vests, the Comptroller may require the distributor to post an irrevocable letter of credit before it may receive stamps without prepayment. Tex. Tax Code Ann. ' 154.051(e) (West 2002). As long as a vested distributor stays current on its stamp payments and remains vested, the distributor receives a quarterly refund of its stamping allowance deposited into the Fund in excess of the required balance, plus interest. *Id*. ' 154.051(d).

154.051 listed several types of Aacceptable@ securities including Acertificates of deposit, treasury bills, [and] treasury notes,@ all of which were backed by the federal government.  In response, McLane paid two stamp invoices and, along with the payments, sent a letter of protest pursuant to sections 112.051 and 112.101 of the tax code (hereafter, the Aprotest statutes@), stating it was paying the invoices as prerequisite to filing suit.  *See id.* '' 112.051, .101 (West 2001).

McLane then sued the Comptroller, seeking:  (1) the recovery of Ataxes@ paid under protest; (2) an injunction prohibiting the Comptroller from denying McLane the right to provide its letter of credit as collateral in lieu of Fund participation and from requiring its continued participation to obtain stamps without prepayment; (3) a declaration that it could pledge an irrevocable letter of credit in lieu of participating in the Fund, *see* Tex. Civ. Prac. & Rem. Code Ann. '' 37.001-.011 (West 1997 & Supp. 2004-2005) (the Uniform Declaratory Judgments Act or AUDJA@); (4) a declaration that the Comptroller violated McLane=s rights by withholding the three-percent stamping allowance and by Aforcing them to pay the 3% allowance in issue under protest@; and (5) a declaration that the Comptroller was taking McLane=s property without just compensation and violating the Commerce Clause and its rights to due process and equal protection.  *See* 42 U.S.C.A. ' 1983 (West 2003) (Asection 1983@).

The Comptroller filed a plea to the jurisdiction and a motion for summary judgment arguing that (1) McLane=s suit was barred by sovereign immunity because the legislature had not provided McLane with any cause of action to complain about the Comptroller=s administration of the Fund, (2) jurisdiction lay with the Texas Supreme Court pursuant to section 22.002(c) of the government code[4] because McLane=s

---

[4] Section 22.002 provides that only the supreme court may issue a writ of injunction against an

4

cause of action was in the nature of a mandatory injunction, and (3) the protest statutes were inapplicable because McLane was not disputing a Atax or fee@ imposed by the Comptroller. After a hearing, the district court granted the Comptroller=s plea in part, stating that McLane had not established jurisdiction under the protest statutes. The court denied the remainder of the Comptroller=s plea, but granted her motion for summary judgment on all non-jurisdictional grounds, thus disposing of McLane=s suit.

On appeal, McLane argues that the district court had jurisdiction over the suit under chapter 112 of the tax code, the UDJA, and section 1983. The Comptroller asserts that the district court properly granted in part its plea to the jurisdiction but that it was error to deny the remainder of its plea. The Comptroller argues that McLane=s entire suit is barred by sovereign immunity because it is an attempt to interfere with the exercise of her lawful authority and thus violates the separation of powers doctrine. Because jurisdiction is essential to our authority to consider McLane=s issues and is dispositive of this appeal, we first address the Comptroller=s contention.

**Standard of Review**

A suit against a state officer lawfully exercising her governmental functions is considered a suit against the State, and is barred by sovereign immunity absent legislative consent. *Director of Dep=t of Ag. & Env=t v. Printing Indus. Ass=n of Tex.*, 600 S.W.2d 264, 265-66, 270 (Tex. 1980); *King v.*

officer of Athe executive departments of the government of this state@ to compel Athe performance of a judicial, ministerial, or discretionary act or duty that, by state law, the officer [is] authorized to perform.@ Tex. Gov=t Code Ann. ' 22.002(c) (West 2004).

*Texas Dep=t of Human Servs. ex rel. Bost*, 28 S.W.3d 27, 33 (Tex. App.CAustin 2000, no pet.). It is for the legislature alone Ato waive or abrogate sovereign immunity.@ *Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 409 (Tex. 1997). Whether a court has subject-matter jurisdiction and whether a plaintiff has affirmatively established subject-matter jurisdiction are questions of law that we review *de novo. Texas Dep=t of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). To determine whether a plaintiff demonstrated a court=s jurisdiction, we consider the facts alleged in the petition, and to the extent it is relevant to the jurisdictional issue, any evidence submitted by the parties to the trial court. *Id*. at 226-27. In deciding a plea to the jurisdiction, we may not weigh the merits of the plaintiff=s claims but may consider only the pleadings, construed in favor of the plaintiff, and evidence pertinent to the jurisdictional inquiry. *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002). If a plaintiff pleads facts that affirmatively negate jurisdiction and the defect is incurable, dismissal is proper. *Id*. If the plaintiff=s pleadings are insufficient to establish jurisdiction but do not show incurable jurisdictional defects, the proper remedy is to allow the plaintiff an opportunity to amend. *Id*. We now turn to McLane=s pleadings to determine whether it established jurisdiction.

**Waiver of Immunity Under the UDJA**

McLane argued that the district court had jurisdiction over its claims under the UDJA because the Comptroller acted outside of her legal authority in refusing to accept McLane=s irrevocable letter of credit as collateral for McLane=s continuing to receive stamps without prepayment and without Fund participation. The UDJA allows a person Awhose rights, status, or other legal relations are affected by a statute@ to Ahave determined any question of construction or validity arising under the . . . statute . . . and

6

obtain a declaration of rights, status, or other legal relations thereunder.@ Tex. Civ. Prac. & Rem. Code Ann. ' 37.004(a) (West 1997).

A party may seek declaratory relief against a state official allegedly acting outside of or without legal authority and seek to compel the official to act within her official capacity; such a suit is not considered a suit against the state. *Texas Natural Res. Conservation Comm=n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2001); *W.D. Haden Co. v. Dodgen*, 308 S.W.2d 838, 840 (Tex. 1958); *Rylander v. Caldwell*, 23 S.W.3d 132, 135-36 (Tex. App.CAustin 2000, no pet.). On the other hand, a suit that seeks to impose liability on the state or to control state action is a suit against the state and may not be maintained without a waiver of sovereign immunity. *Printing Indus. Ass=n*, 600 S.W.2d 265-66, 270; *Potter County Attorney=s Office v. Stars & Stripes Sweepstakes, L.L.C.*, 121 S.W.3d 460, 470-71 (Tex. App.CAmarillo 2003, no pet.); *King*, 28 S.W.3d at 33. A suit that seeks to control a state official=s exercise of discretion within her legal authority is a suit to control state action and cannot be maintained without legislative permission. *King*, 28 S.W.3d at 33. A discretionary act is one that requires the exercise of Apersonal deliberation, decision and judgment.@ *City of Lancaster v. Chambers,* 883 S.W.2d 650, 654 (Tex. 1994).

Therefore, to determine whether McLane may maintain its declaratory judgment suit against the Comptroller, we must decide whether the Comptroller validly exercised her discretion or acted outside of her legal authority in refusing to accept the letter of credit, which in turn requires us to construe section 154.051. Statutory construction is a question of law, which we review *de novo*. *Bragg v. Edwards Aquifer Auth.*, 71 S.W.3d 729, 734 (Tex. 2002). We seek to ascertain and give effect to the legislature=s

7

intent for the provision in question. *State v. Terrell*, 588 S.W.2d 784, 786 (Tex. 1979). The legislature=s intent is determined by reading the language used and construing the statute in its entirety. *Id.*; *see Cornyn v. Universe Life Ins. Co.*, 988 S.W.2d 376, 378-79 (Tex. App.CAustin 1999, pet. denied). We read every word as if it were deliberately chosen and presume that omitted words were excluded purposefully. *Cornyn*, 988 S.W.2d at 379. Our interpretation must not lead to foolish or absurd results or attribute to the legislature an intent to work injustice, but if a legislative policy simply seemsAunwise or inconsistent with other policies,@we may not depart from Athe plain meaning of the legislative mandate.@ *Id*.

The disputed provision here is paragraph (o) of section 154.051, which states that in lieu of participating in the Fund, a distributorAmay pledge to the comptroller sufficient collateral to secure payment for the stamps. Such pledge . . . shall consist of certificates of deposit, treasury notes, treasury bills, or other similar types of collateral *acceptable to the comptroller.*@ Tex. Tax Code Ann. ' 154.051(o) (emphasis added). Although a letter of credit is required as collateral from a distributor not yet vested in the Fund, *see id*. ' 154.051(e), (f), (g),[5] it is not listed among the forms of collateral that allow a distributor to

---

[5] Paragraph (e) requires an irrevocable letter of credit from a distributor that is in the process of becoming vested in the Fund. Tex. Tax Code Ann. ' 154.051(e). Paragraph (f) provides that A[i]n addition to any other requirement under this section, the comptroller as a condition for shipping stamps without advance payment may . . . require a distributor to post a letter of credit.@ *Id*. ' 154.051(f)(5). Under paragraph (g), a distributor whose Fund balance drops below the required minimum must post an irrevocable letter of credit. *Id*. ' 154.051(g).

buy stamps without prepayment or any level of Fund participation. Further, section 151.051(f) provides, AIn addition to any other requirement under this section, the comptroller as a condition for shipping stamps without advance payment may . . . take any other reasonable and necessary action to protect the state treasury from loss due to the nonpayment of cigarette taxes.@ *Id*. ' 154.051(f)(7).

We conclude that the legislature=s language in section 154.051(o) evidences a clear grant of discretion. By that language, the legislature clearly gave the Comptroller the authority and responsibility to manage and administer the Fund, including the authority to decide what collateral to accept in lieu of Fund participation other than certificates of deposit, treasury bills and notes. That the legislature specifically referred to or required irrevocable letters of credit in some circumstances and omitted to mention them in others supports our conclusion. *See Cornyn*, 988 S.W.2d at 379 (presumption that legislature intended to include or omit particular words). Contrary to McLane=s assertions, the Comptroller acted within her statutory authority in refusing to accept an irrevocable letter of credit. McLane=s suit, therefore, is seeking to control state action and is a suit against the state.[6] Under these circumstances, McLane may not maintain the suit without legislative permission.[7] *See Printing Indus. Ass=n*, 600 S.W.2d at 270 (officials acted

---

[6] A judicial decision overriding the Comptroller=s legislatively granted discretion and requiring her to accept a particular kind of collateral not enumerated by statute could run afoul of the separation of powers doctrine. Tex. Const. art. 2, ' 1; *see Armadillo Bail Bonds v. State*, 802 S.W.2d 237, 239 (Tex. Crim. App. 1990) (separation of powers violated if one branch of government assumes, to any degree, power more Aproperly attached@ to another branch or so unduly interferes that other branch cannot effectively exercise constitutionally assigned powers); *see also City of Stephenville v. Texas Parks & Wildlife Dep=t*, 940 S.W.2d 667, 678 (Tex. App.CAustin 1996, writ denied) (AThe judiciary cannot modify an agency order without usurping the agency=s authority and thereby violating the separation of powers doctrine.@).

[7] We note that our holding is limited to the circumstances presented here. We do not hold that the

within scope of authority and thus suit barred by sovereign immunity).  The district court lacked jurisdiction over McLane=s UDJA claims.

**Waiver of Immunity Based on the Protest Statutes**

McLane also sought to establish jurisdiction under the protest statutes, sections 112.051 and 112.101 of the tax code.  Section 112.051 requires a taxpayer contesting the validity of a Arequired@ tax or fee to pay the tax or fee along with a protest and then sue for the payment=s return.  Tex. Tax Code Ann. ' 112.051(a).  Section 112.101 authorizes an injunctive action to prohibit the Aassessment or collection of a tax or fee imposed@ by the State after the complainant pays the disputed tax or fee.  *Id*. ' 112.101(a).

McLane stated in its pleadings:

> The protested taxes consist of 3% of Plaintiffs= monthly cigarette taxes.  Under ' 154.052(a) of the Tax Code, the Legislature directed that Plaintiffs are entitled to retain those taxes as a fee for stamping cigarettes upon withdrawing from the Fund.  The Comptroller forced Plaintiffs to pay the taxes under protest by refusing to allow Plaintiffs to withdraw from the Fund.

McLane also sought a refund of its full Fund account balance, less Athe taxes paid in protest.@

---

Comptroller=s management of the Fund cannot be subject to judicial review.  We hold only that McLane failed to establish the court=s jurisdiction over the particular subject matter at issueCthe Comptroller=s authority to decide what she will accept as collateral other than certificates of deposit, treasury notes, and bills.

The three percent referenced is the stamping allowance McLane earned for placing stamps on the cigarette packages. McLane complained that if it was allowed to pledge an irrevocable letter of credit in lieu of participating in the Fund, it could retain its stamping allowance, but because the Comptroller would not accept the letter of credit, McLane was Aforced@ to submit its stamping allowance, which amounted to the imposition and payment of a required tax.

McLane, however, overlooks the voluntary nature of the Fund. While from a business standpoint securing the payment of taxes by depositing twenty percent of a company=s monthly cigarette taxes may be preferable to paying the tax in advance, McLane does not dispute that it could have withdrawn from the Fund, received a refund of its Fund balance, and prepaid for its stamps. McLane also had the option of pledging an approved security in lieu of participating in the Fund, an option it attempted to pursue with its letter of credit. *See* Tex. Tax Code Ann. ' 154.051(o).[8]

McLane was not seeking the return of the stamp taxes it paid under the invoices but rather sought both to withdraw from the Fund, receiving a refund of its stamping allowance, and to continue to obtain stamps on credit. In other words, McLane did not protest the stamp tax itself, but rather the Comptroller=s terms under which a distributor may obtain stamps without prepayment or Fund participation.

---

[8] We note that the Comptroller is authorized to take action she believes proper to Aprotect the state treasury from loss due to the nonpayment of cigarette taxes.@ *See* Tex. Tax Code Ann. ' 154.051(f)(7). Consequently, although section 154.051 gives distributors alternatives to Fund participation, whether and to what extent a distributor can avail itself of those options is to some degree left to the discretion of the Comptroller.

McLane was not protesting the stamp tax or other Arequired@ or Aimposed@ taxes or fees and, therefore, its pleadings affirmatively negate jurisdiction under the protest statutes. *See id.* '' 112.051(a), .101(a). We overrule McLane=s third issue.

## Waiver of Immunity Based on Section 1983

McLane further asserted jurisdiction pursuant to section 1983, which creates a cause of action against A[e]very person who, under color of any [state law], subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution.@ 42 U.S.C.A. ' 1983. McLane sued ACarole Keeton Strayhorn in her official capacity as Comptroller of Public Accounts for the State of Texas.@ The Comptroller argues that McLane=s section 1983 claim was barred by sovereign immunity because she did not fall within the statutory definition of a Aperson@ under section 1983.

We agree with the Comptroller that McLane=s suit was barred by sovereign immunity and that the Comptroller, acting in her official capacity, was not subject to suit. In *Will v. Michigan Department of State Police*, the Supreme Court held that state officials are entitled to sovereign immunity and are not Apersons@ under section 1983 to the extent they are sued in their official capacities. 491 U.S. 58, 66-71 (1989) (suit against official in her official capacity is suit not against official but rather her office and therefore is Ano different from a suit against the state itself@; Aneither a state nor its officials acting in their official capacities are >persons= under ' 1983@). McLane attempted to paint the Comptroller=s actions as unauthorized and not undertaken in her official capacity. However, we have held that the Comptroller was granted the authority to determine whether a proposed form of collateral is acceptable and, thus, to reject

12

McLane=s attempts to pledge an irrevocable letter of credit.  Because the Comptroller was both acting and sued in her official capacity, she was not a Aperson@ under section 1983 and thus is entitled to sovereign immunity.

## Conclusion

We have concluded that the district court did not have jurisdiction under the UDJA, the protest statutes, or section 1983.  We therefore modify the judgment to dismiss for want of jurisdiction McLane=s complaints brought under the UDJA and section 1983 and affirm the judgment as modified.


David Puryear, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Modified and, as Modified, Affirmed

Filed:   October 14, 2004

13