# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00291-CV

**Susan Combs, in her Official Capacity as Comptroller of Public Accounts for the State of Texas, Appellant**

**v.**

**City of Webster, Webster Economic Development Corporation, City of Denton, City of Humble, City of Lewisville, City of Mesquite, City of North Richland Hills, City of Plano, City of Waco, Denton County Transportation Authority, and Fort Worth Transportation Authority, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT NO. D-1-GV-06-001823, HONORABLE GISELA D. TRIANA-DOYAL, JUDGE PRESIDING

## O P I N I O N

This suit involves the allocation of local sales tax revenue by the Texas Comptroller of Public Accounts. The Comptroller is responsible for collecting local sales tax from retailers, and then distributing the revenue to the appropriate local taxing jurisdictions. Appellees are numerous local taxing jurisdictions that had originally received allocations of local sales tax revenue attributable to certain furniture retailers' sales, based on the locations of the retail stores in which the sales occurred. Beginning in 2006, the Comptroller notified appellees that a portion of that revenue would instead be allocated to another local taxing jurisdiction. This reallocation was based on the Comptroller's determination that the sales were consummated for sales tax purposes in the city where the retailers' warehouses are located. The Comptroller applied this determination both

prospectively and retroactively to May 2002. The retroactive aspect of the Comptroller's ruling requires the Comptroller to recoup tax revenues from appellees that have already been paid to them.

Appellees filed suit against appellant Susan Combs, in her official capacity as Comptroller of Public Accounts for the State of Texas, asserting (1) claims under the Texas Constitution for violation of the due course of law and takings provisions, (2) claims under the Uniform Declaratory Judgments Act (UDJA) that the Comptroller had acted outside her authority in interpreting and applying the Texas Tax Code provisions that govern the location where a sale is consummated, and in applying a change in local sales tax allocation retroactively, and (3) a claim under the Administrative Procedure Act (APA) that the Comptroller's rule allowing retrospective reallocation of local sales tax was not properly promulgated. The Comptroller filed a plea to the jurisdiction as to all claims. The district court denied the plea, and the Comptroller appeals.

We affirm the district court's denial of the plea to the jurisdiction as to appellees' claim under the UDJA that the Comptroller acted outside her authority in applying the tax code regarding where the specific sales at issue were consummated. We reverse the district court's order as to the remainder of appellees' UDJA claims, their constitutional claims, and their APA claim, and dismiss those claims for lack of subject-matter jurisdiction.

**Factual and Procedural Background**

Appellees are municipalities and other local jurisdictions that have authority by statute to impose or receive local sales and use taxes. *See* Tex. Tax Code Ann. § 321.101 (West 2008) (municipalities), § 322.101 (West 2008) (transportation authorities); Tex. Rev. Civ. Stat. Ann. art. 5190.6, §§ 4A(d), 4B(d) (West Supp. 2008) (economic development corporations).

Although such local jurisdictions can impose local sales and use taxes, the Comptroller is responsible for administering, collecting, and enforcing the taxes. *See* Tex. Tax Code Ann. §§ 321.301, 322.201 (West 2008). Retailers are generally responsible for reporting and remitting sales tax collected—state and local—to the Comptroller. *See, e.g.*, *id.* §§ 151.409, .410 (West 2008). The Comptroller is then responsible for disbursing the local portion of the sales tax to the appropriate local taxing jurisdictions. *See id.* §§ 321.502, 322.302 (West 2008).

In August 2006, appellees the City of Webster and the Webster Economic Development Corporation (collectively, "Plaintiffs") received notice that the Comptroller intended to recover over $500,000 in local sales tax previously disbursed to them. This reclaiming and reallocation of disbursed tax revenue was a result of RoomStore, Inc., which operated a retail furniture store in Webster, Texas, having amended its sales tax reports to change its "place of business" from its retail store in Webster to its warehouse located in Grand Prairie, Texas. The Comptroller's reallocation applied retroactively to the time period from May 2002 through January 2006, and was to be applied prospectively as well. Also, in 2006 and 2007, appellees the City of Denton, the City of Humble, the City of Lewisville, the City of Mesquite, the City of North Richland Hills, the City of Plano, the City of Waco, the Denton County Transportation Authority, and the Fort Worth Transportation Authority (collectively, "Intervenors") received similar notices from the Comptroller, involving over $4,000,000 previously disbursed to them. This reallocation and reclaiming of tax revenue, similarly, was a result of the Comptroller's determination that the "places of business" for sales tax purposes of furniture retailers Ashley Furniture and RoomStore were their warehouses located in Grand Prairie rather than their retail outlets in other cities.

3

On September 15, 2006, Plaintiffs filed suit against the Comptroller, and on April 18, 2007, Intervenors filed a plea in intervention and third-party petition in the lawsuit. Appellees—both Plaintiffs and Intervenors—assert essentially the same causes of action. Specifically, appellees assert: (1) claims under the Texas Constitution for the Comptroller's failure to provide due course of law, *see* Tex. Const. art. I, § 19, and for the taking of property without compensation, *see id.* art. I, § 17; (2) claims for declaratory relief under the UDJA, *see* Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-.011 (West 2008); and (3) a claim for declaratory relief under the APA, *see* Tex. Gov't Code Ann. § 2001.038 (West 2008).

The Comptroller filed a plea to the jurisdiction as to all of appellees' causes of action. The district court denied the Comptroller's plea. The Comptroller filed this interlocutory appeal. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West 2008).

**Analysis**

A plea to the jurisdiction challenges the trial court's authority to determine the subject matter of a specific cause of action. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553-54 (Tex. 2000). Whether a court has subject-matter jurisdiction and whether a plaintiff has alleged facts that affirmatively demonstrate subject-matter jurisdiction are questions of law that we review de novo. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

When a plea to the jurisdiction challenges the plaintiffs' pleadings as to a cause of action, we determine if the plaintiffs have alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Id.* If so, the plea to the jurisdiction should be denied. On the other hand, if the pleadings affirmatively negate the existence of jurisdiction, then the plea

4

should be granted. *See id.* at 227. If, however, the pleadings—construed liberally in favor of the plaintiffs—neither contain sufficient facts to affirmatively demonstrate the existence of jurisdiction nor affirmatively demonstrate incurable defects in jurisdiction, then the plaintiffs should receive an opportunity to amend their pleadings. *See id.* at 226-27.

If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties as necessary to resolve the jurisdictional issues raised. *Id.* at 227. When such a jurisdictional challenge implicates the merits of the plaintiffs' cause of action, the relevant evidence must be reviewed for the existence of a fact issue. *Id.* In that case, we take as true all evidence favorable to the nonmovant, and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *See id.* at 228. If the relevant jurisdictional evidence is undisputed or fails to raise a fact question, the plea may be ruled on as a matter of law.[1] *Id.* If, however, the jurisdictional evidence raises a material fact question on the jurisdictional issue, the plea should not be granted, as fact issues must be resolved by the fact-finder. *See id.* at 227-28. *See generally Hendee v. Dewhurst*, 228 S.W.3d 354, 366-69 (Tex. App.—Austin 2007, pet. denied).

In this lawsuit, appellees seek judicial review of the Comptroller's determinations of certain retailers' "place of business" for purposes of local sales tax allocation and, in accordance with

---

[1] For this reason, a trial court has discretion to postpone its consideration of a jurisdictional challenge, so that the plaintiff has sufficient opportunity to produce evidence that can raise a fact issue. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004); *Hendee v. Dewhurst*, 228 S.W.3d 354, 369 (Tex. App.—Austin 2007, pet. denied). Providing the plaintiff the opportunity to produce relevant evidence also supports this Court's reluctance to consider bases for dismissal on interlocutory appeal that were neither included in the plea to the jurisdiction nor considered by the trial court. *See Hendee*, 228 S.W.3d at 375-76; *Austin Indep. Sch. Dist. v. Lowery*, 212 S.W.3d 827, 833-34 (Tex. App.—Austin 2006, pet. denied); *City of Dallas v. First Trade Union Sav. Bank*, 133 S.W.3d 680, 687 (Tex. App.—Dallas 2003, pet. denied).

such determinations, the Comptroller's reclaiming and reallocation of tax revenue already disbursed. "It is well recognized under Texas law that there is no right to judicial review of an administrative order unless a statute provides a right or unless the order adversely affects a vested property right or otherwise violates a constitutional right." *Continental Cas. Ins. Co. v. Functional Restoration Assocs.*, 19 S.W.3d 393, 397 (Tex. 2000) (citing *Stone v. Texas Liquor Control Bd.*, 417 S.W.2d 385, 385-86 (Tex. 1967)); *see Smith v. Abbott*, No. 03-06-00358-CV, 2009 Tex. App. LEXIS 5928, at *33 (Tex. App.—Austin July 31, 2009, no pet. h.) ("Absent a statutory right to judicial review of the license-suspension orders, a suit challenging the orders is one to 'control state action' and is barred by sovereign immunity, unless the orders were ultra vires of SOAH's statutory authority or unconstitutional." (citations omitted)). Appellees concede that while taxpayers have the statutory authority to amend their tax returns and seek a refund, *see* Tex. Tax Code Ann. § 111.104 (West 2008), no provision of the tax code provides a method for local taxing jurisdictions to raise the challenges that appellees assert in this lawsuit. Nonetheless, appellees argue that they have a right to judicial review under the Texas Constitution, by way of their due course of law and takings claims, and by statute, through their UDJA and APA claims.

### Constitutional Claims

Appellees have alleged the following claims under the Texas Constitution: (1) the Comptroller's interpretation of the tax code constitutes a violation of their right to substantive due course of law, *see* Tex. Const. art. I, § 19; (2) the Comptroller's attempt to recover and reallocate sales tax revenues already disbursed to the local jurisdiction, without providing notice or opportunity to be heard, violates the procedural due course of law provisions of the Texas Constitution, *see id.*;

6

and (3) the Comptroller's recovery of tax revenues and transfer of those revenues to another taxing jurisdiction is a taking of property without the payment of adequate compensation, *see id.* art. I, § 17. Because no waiver of sovereign immunity is necessary for these types of constitutional claims, to the extent any of these claims is viable the district court has jurisdiction over them. *See General Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 598 (Tex. 2001); *Texas State Employees Union v. Texas Workforce Comm'n*, 16 S.W.3d 61, 66-67 (Tex. App.—Austin 2000, no pet.).

The Comptroller's plea to the jurisdiction as to appellees' constitutional claims challenges the pleadings. Therefore, our task is to determine whether appellees have alleged facts that affirmatively demonstrate the district court's jurisdiction to hear the constitutional claims. *See Miranda*, 133 S.W.3d at 226. If the pleadings affirmatively negate the existence of jurisdiction, then the plea should be granted. *See id.* at 227.

The Comptroller contends that appellees do not have a vested property interest at stake. Each of appellees' constitutional claims requires the existence of such a protected right. *See Spring Branch Indep. Sch. Dist. v. Stamos*, 695 S.W.2d 556, 560-62 (Tex. 1985) (procedural and substantive due process claims); *Dallas County v. Gonzales*, 183 S.W.3d 94, 111 (Tex. App.—Dallas 2006, pet. denied) (same); *City of Houston v. Northwood Mun. Util. Dist. No. 1*, 73 S.W.3d 304, 311 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) (takings claim). Moreover, if the pleadings affirmatively negate a required element of a constitutional claim against the State, grant of the State's plea to the jurisdiction as to that claim is proper. *See State v. Holland*, 221 S.W.3d 639, 643-44 (Tex. 2007). According to appellees' pleadings, the property interest at stake is the tax revenues that were received by appellees, but that have been or will be diverted to the City of Grand Prairie. If, then, the Comptroller is correct that appellees do not have a vested

7

interest in the tax revenues at issue, appellees' constitutional claims have no merit, and the Comptroller's plea to the jurisdiction should be granted as to those claims. If, on the other hand, appellees do have a vested interest in the tax revenues, the Comptroller's arguments fail and the district court's denial of her plea as to appellees' constitutional claims should be affirmed.[2]

A right is "vested" when it has some definitive, rather than potential, existence. *City of La Marque v. Braskey*, 216 S.W.3d 861, 864 (Tex. App.—Houston [1st Dist.] 2007, pet. denied); *see Shanks v. Treadway*, 110 S.W.3d 444, 446 n.2 (Tex. 2003) ("Pension plan benefits become vested when the employee has an unconditional ownership interest in them . . . ."). To have a property interest in welfare benefits, for example, a person must have a legitimate claim of entitlement, based on an independent source such as state law. *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). Therefore, we look to Texas tax law to determine the nature of appellees' interest in the tax revenues at issue.

---

[2] We find no merit in the Comptroller's other challenges to appellees' constitutional claims. The Comptroller contends that the Texas Supreme Court in *Neeley v. West Orange-Cove Consolidated Independent School District*, 176 S.W.3d 746 (Tex. 2005), limited a local governmental entity's standing to challenge the constitutionality of a state action to situations in which the entity is charged with implementing a statute it believes violates the constitution. Contrary to the Comptroller's argument, however, the supreme court in *West Orange-Cove* recognized that such a situation was a means of establishing standing, not that it was the exclusive means. *See* 176 S.W.3d at 773.

Citing *General Services Commission v. Little-Tex Insulation Co.*, the Comptroller also contends that appellees' takings claim fails because they had to plead that the government acted "within its eminent domain capacity." 39 S.W.3d 591, 598-99 (Tex. 2001). The court in *Little-Tex* held that the State is not subject to a takings claim when it acts within a color of right under a contract because it is "acting akin to a private citizen and not under any sovereign powers." *Id.* at 599. Here, the Comptroller, in overseeing the allocation of local sales tax, was not acting akin to a private citizen. *See Aldine Indep. Sch. Dist. v. Standley*, 280 S.W.2d 578, 583 (Tex. 1955) (agreeing that assessment and collection of taxes is part of sovereign power of State).

The Comptroller is responsible for collecting local sales taxes. Tex. Tax Code Ann. § 321.301. In general, the Comptroller may make a refund or credit based on a taxpayer's overpayment of tax attributable to the same period for which the Comptroller may assess a tax deficiency, *see id.* § 111.107(a) (West 2008), which period ends four years from the date that the tax becomes due and payable, *see id.* § 111.201 (West 2008). It follows that the amount of local sales tax to which a municipality is entitled for a given year is subject to change depending on refunds or other adjustments made by the Comptroller to taxpayers—more specifically for this case, retailers—prior to the end of the four-year period. Until that time, the municipality's interest in a definite amount remains contingent rather than unconditional, and potential rather than definitive. *See Corpus Christi People's Baptist Church, Inc. v. Nueces County Appraisal Dist.*, 904 S.W.2d 621, 626 (Tex. 1995) (taxing unit has no vested right to taxes upon assessment due to existing potential that exemption applies). Because the tax revenues at issue in this lawsuit are attributable to sales tax paid within the four-year period during which tax adjustments are authorized by statute, appellees had no vested interest in the tax revenues actually disbursed but later adjusted and subject to reallocation.

Appellees argue that the contingency of their entitlement to the tax revenues during the four-year period is better characterized as a potential defeasance of their otherwise vested rights. Appellees refer to military retirement pay, which has been held to be a "vested right" even though it is subject to defeasance under federal law for reasons such as the service person's breach of good conduct or death. *See Ex parte Burson*, 615 S.W.2d 192, 196 (Tex. 1981). We are not faced here with possible methods by which a city's entitlement to the tax revenues may be forfeited under statute. Rather, in this situation, the amount of tax revenue to which the city may ultimately

9

be entitled is not fixed on the date the revenues are initially disbursed. State law provides for a window of time in which taxpayers may seek and receive adjustments to their tax liability from the Comptroller, and in this instance the Comptroller has made an adjustment within that window. Thus, during that time period, the taxing unit's entitlement to the precise amount of tax revenues that have been disbursed is conditional under state law. In the event that the Comptroller recalculates a taxpayer's tax liability at a higher amount than paid, and assessed that higher amount within the four-year period, *see* Tex. Tax Code Ann. § 111.201, the Comptroller's demand for additional taxes from the taxpayer would not impair a vested right of the taxpayer, even though attributable to a prior tax year. In the same way, when the Comptroller recalculates the amount to which a local taxing entity is entitled based on taxpayers' adjusted tax liabilities, such action is not an impairment of a *vested* right. Local jurisdictions are presumably aware that the final amount of tax revenues available to them is not—and, by statute, cannot—be fixed until the window for adjustment closes.

In sum, appellees have no vested right in the tax revenues at issue, and therefore, their due course of law and constitutional takings claims fail as a matter of law.[3] Therefore, the pleadings affirmatively negate the existence of jurisdiction over appellees' constitutional claims, and the Comptroller's plea to the jurisdiction should be granted as to those claims. *See Miranda*, 133 S.W.3d at 227.

---

[3] Having concluded that any interest appellees had in the tax revenues had not yet vested, we do not reach or express any opinion on the related issues—raised by the Comptroller—of whether a local governmental entity can, in fact, acquire vested property interests against the State, whether sales tax revenues are the type of property in which such an entity can obtain such a vested right, or whether such an entity can, in fact, assert a due course of law or takings claim against a state agency based on the agency's discretionary acts or statutory violations.

### UDJA Claims

Appellees also seek relief under the Uniform Declaratory Judgments Act. The Comptroller argues that appellees' UDJA claims are barred by sovereign immunity because they are an attempt to control state action.

Sovereign immunity from suit, unless waived, protects the State of Texas, its agencies, and its officials from lawsuits. *See Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 405 (Tex. 1997). It is for the legislature alone to waive sovereign immunity. *See id.* at 409. In administering local sales taxation, the Comptroller exercises a governmental function. *See* Tex. Tax Code Ann. §§ 321.301, 322.201. A suit against a state officer *lawfully* exercising her governmental functions is considered a suit against the State and is barred by sovereign immunity absent legislative consent. *McLane Co. v. Strayhorn*, 148 S.W.3d 644, 649 (Tex. App.—Austin 2004, pet. denied); *see City of El Paso v. Heinrich*, 284 S.W.3d 366, 371 (Tex. 2009) (suit alleging violation of statute "leaving no room for discretion" is not barred). Conversely, a private litigant does not need legislative permission to sue the State for a state official's violations of state law. *Federal Sign*, 951 S.W.2d at 404. Unlike a suit challenging a state official's discretionary acts, an action to determine or protect a private party's rights against a state official who has acted *without* legal or statutory authority—i.e. has acted ultra vires—is not a suit against the State that is barred by sovereign immunity. *See id.* The issue here, then, is whether appellees have alleged an act by the Comptroller that is not within her legal or statutory authority.

Appellees contend that such an inquiry, here, would involve an improper inquiry into the merits of their claims. However, when a plea to the jurisdiction challenges the existence of jurisdictional facts—as is the case with the Comptroller's challenge of appellees' UDJA claims—and

11

the jurisdictional challenge implicates the merits, we must resolve the jurisdictional issue unless the jurisdictional inquiry involves an issue of material fact that is properly disputed and controverted. *See Miranda*, 133 S.W.3d at 227-28; *Hendee*, 228 S.W.3d at 368-69 ("summary judgment-like process" applies when plea challenges alleged acts that are asserted to have been beyond actor's constitutional or statutory authority). Appellees are correct that the proper interpretation of the tax code provisions at issue overlaps with the merits of appellees' claims. However, we must construe these same statutes in our jurisdictional inquiry because if we determine as a matter of law that the Comptroller's actions were within her statutory authority, then appellees' claims are not ultra vires claims, the Comptroller's sovereign immunity against appellees' claims has not been waived, and the Comptroller's plea must be granted and appellees' claims dismissed. *See Miranda*, 133 S.W.3d at 228; *McLane Co.*, 148 S.W.3d at 650-51.[4]

### (1)    Construction of "place of business" definition

Appellees seek a declaratory judgment that the Comptroller's reallocation of certain tax revenues to the City of Grand Prairie—including amounts previously disbursed to appellees—is based on an incorrect statutory interpretation. Specifically, appellees take issue with

---

[4] In addressing the scope of our ultra vires inquiry at this stage, the Comptroller argues that this Court, in the case *Texas Department of Insurance v. Reconveyance Services, Inc.*, 240 S.W.3d 418 (Tex. App.—Austin 2007, pet. filed), failed to "follow[] the Texas Supreme Court's precedent and resolve[] the scope of the plaintiff's legal and statutory claims in order to determine whether the claim falls within an exception to immunity." However, the state agency in *Reconveyance* did not challenge the denial of its plea to the jurisdiction based on sovereign immunity. *See* 240 S.W.3d at 427. Consequently, this Court did not reach the question of whether the agency's actions in *Reconveyance* were within its statutory authority as a matter of law.

the Comptroller's interpretation of the statutory requirements that apply for the retailers' warehouses located in Grand Prairie to be considered "places of business" under the tax code.

For purposes of local sales tax, the sale of a taxable item occurs within the municipality in which the sale is consummated. *See* Tex. Tax Code Ann. § 321.203(a) (West 2008).[5] Generally, the location at which a sale is consummated is a "place of business" of the retailer. *See id.* § 321.203(b)–(d). As to the sales at issue, customers ordered furniture at the retail store locations within appellees' jurisdictions, and the retailers shipped the furniture directly to the customers from the Grand Prairie warehouses.[6] The parties do not dispute that the retail stores affiliated with the retailers at issue in this lawsuit are places of business. Under tax code section 321.203, then, if the warehouses are not places of business, the sales will be considered consummated at the retail store locations, which are "the retailer's place of business in this state where the order is received." *Id.* § 321.203(d)(1). If, however, the warehouses are places of business, the furniture sales are considered to have been consummated at the warehouses, which are the locations "from which the retailer ships or delivers the item, if the retailer ships or delivers the item to a point designated by the purchaser or lessee." *Id.* § 321.203(c)(1).

---

[5] The municipal sales tax statutes relevant to the UDJA claim are also made applicable to local sales tax imposed by transportation authorities. *See* Tex. Tax Code Ann. § 322.108(a)(1), (3) (West 2008). Moreover, an economic development corporation's receipt of sales tax revenue is dependent on the municipality's. *See* Tex. Rev. Civ. Stat. Ann. art. 5190.6, §§ 4A(f), 4B(g) (West Supp. 2008).

[6] For the retailers' sales in which the customers instead take possession of and remove the furniture at the retail store, the retail store is the applicable place of business. *See* Tex. Tax Code Ann. § 321.203(c)(2) (West 2008).

Consequently, whether the Comptroller's allocation to the City of Grand Prairie of local sales tax paid by RoomStore and Ashley Furniture is in compliance with the tax code depends on whether the Grand Prairie warehouses qualify as "places of business." Section 321.002 of the tax code defines "place of business" in relevant part as:

> an established outlet, office, or location operated by the retailer or the retailer's agent or employee for the purpose of receiving orders for taxable items and includes any location at which three or more orders are received by the retailer during a calendar year. A warehouse, storage yard, or manufacturing plant is not a "place of business of the retailer" unless at least three orders are received by the retailer during the calendar year at the warehouse, storage yard, or manufacturing plant.

*Id.* § 321.002(a)(3) (West 2008); *see* 34 Tex. Admin. Code § 3.374(a)(2) (2007).

When construing a statute, we begin with its plain language. *See State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). Appellees contend that a location must be operated "for the purpose of receiving orders for taxable items" for the location to be a place of business under the statutory definition. *See* Tex. Tax Code Ann. § 321.002(a)(3). However, the statute plainly states that the definition of place of business "includes any location at which three or more orders are received by the retailer during a calendar year." *Id.* This portion of the definition is not qualified or conditional in any way on the portion of the definition referring to a retailer's "purpose" for the location. Whether one views the "three or more orders" language as setting out independent criteria for being a place of business or articulating a specific manner in which the "purpose" requirement can be met, it is a reasonable interpretation of the statutory definition that a location may be a place of business if it receives three or more orders during a calendar year. *See id.*; *Tarrant Appraisal Dist. v. Moore*, 845 S.W.2d 820, 823 (Tex. 1993) ("Construction of a statute by the administrative

14

agency charged with its enforcement is entitled to serious consideration, so long as the construction is reasonable and does not contradict the plain language of the statute"); *Farmers Tex. County Mut. Ins. Co. v. Romo*, 250 S.W.3d 527, 536 (Tex. App.—Austin 2008, no pet.).

We hold that the Comptroller's interpreting tax code section 321.002(a)(3), such that a location at which a retailer receives three or more orders during a calendar year can be a place of business even without separate evidence that it is a location established "for the purpose of" receiving orders for taxable items, is a reasonable interpretation. The phrase "and includes" can reasonably be interpreted to indicate that the "for the purpose of" phrase and the "three or more orders" phrase are alternate methods of satisfying the statutory definition.[7] To fall within the ultra vires exception to sovereign immunity, a suit must allege, and ultimately prove, that the state official acted without legal authority or failed to perform a ministerial act. *See Heinrich*, 284 S.W.3d at 372. Appellees have failed to allege an act by the Comptroller that is outside her legal or statutory authority. The Comptroller's interpretation of section 321.002(a)(3) is consistent with the statute and legislative intent as expressed in the language of the statute. Consequently, appellees have not alleged a valid ultra vires claim. Sovereign immunity bars appellees' claim under the UDJA.[8]

---

[7] We note that, based on the second sentence of the definition, a location *must* receive three or more orders during a calendar year to be a place of business if that location is a "warehouse, storage yard, or manufacturing plant." *See id.* We also note that we do not determine whether a place of business must be "an established outlet, office, or location operated by the retailer or the retailer's agent or employee," *see id.*, as appellees do not raise this issue.

[8] Appellees' primary complaint against the Comptroller's statutory interpretation appears to be that it leads to unfair results. Under the Comptroller's interpretation, when a customer visits a retail store, where he places an order and pays for his purchase, and then receives the merchandise at his home, all occurring within the same taxing jurisdiction, the City of Grand Prairie will

*(2)      Application of "place of business" definition*

Appellees also seek a declaratory judgment that in reallocating to the City of Grand Prairie tax revenues previously disbursed to appellees, the Comptroller misapplied tax code section 321.002(a)(3). Specifically, Appellees contend that, even if we find the Comptroller's interpretation of section 321.002(a)(3) to be reasonable, the Comptroller's determination that the retailers' Grand Prairie warehouses are "places of business" is incorrect under such interpretation. In seeking a declaration that the retailers' warehouses are not "places of business" in accordance with the Comptroller's interpretation of the statutory definition, appellees have alleged an ultra vires claim under the UDJA. *See Cobb v. Harrington*, 190 S.W.2d 709, 712 (Tex. 1945) (sovereign immunity does not bar UDJA claim seeking declaration that plaintiffs are not "motor carriers" as defined by statute and, therefore, that Comptroller acted without legal authority in compelling plaintiffs to pay tax applicable to motor carriers); *Texas Dep't of Ins. v. Reconveyance Servs., Inc.*, 240 S.W.3d 418, 434 (Tex. App.—Austin 2007, pet. filed) ("[I]t is well-established that Texas courts have subject-matter jurisdiction to declare illegal or enjoin agencies' acts that misinterpret *and misapply* the laws they are charged with administering." (Emphasis added.)).

An administrative agency has the power to interpret its own rules, and its interpretation is entitled to great weight and deference. *ASAP Paging Inc. v. Public Util. Comm'n*, 213 S.W.3d 380, 394 (Tex. App.—Austin 2006, pet. denied). According to statements by the

nonetheless receive the local tax revenue simply because the warehouse that shipped the merchandise to the customer received three unrelated orders during the same calendar year. Supporting their complaint, appellees allege that the City of Grand Prairie has made arrangements with the retailers to pay back to them a considerable portion of the local sales taxes collected. We offer no opinion on this point, however, because whether this result involves "fair" tax policy is a question for the legislature.

16

Comptroller in the documents attached to the plea to the jurisdiction and appellees' responsive filings, the three orders required for a distribution center to be considered a place of business under the tax code may be received at the distribution center itself, or by any of the following that is in the same building, provided that the connecting doors are unlocked: (1) a corporate office that sells products; (2) a salesperson assigned to the distribution center; (3) a showroom or clearance center with regular hours of operation open to the public for sales of merchandise; or (4) an internet computer system receiving orders. Appellees contend that the RoomStore warehouse does not qualify under the Comptroller's own guidelines. The record includes the Comptroller's internal email from September 2005 indicating that at some point the Comptroller had determined that the RoomStore's Grand Prairie distribution center and corporate office were "separated by a wall and the doors are locked," and that customers "can never order anything from the distribution center" itself.

When the plea to the jurisdiction challenges the existence of jurisdictional facts and such challenge implicates the merits, we may rule on the plea as a matter of law if the relevant evidence is undisputed or fails to raise a fact issue. *See Miranda*, 133 S.W.3d at 227-28. Here, however, the Comptroller has not produced any evidence relevant to whether the retailers' warehouses are, in fact, places of business as defined by the tax code. The Comptroller alleges that the retailers "satisfactorily explained" in amended tax returns that their warehouses were places of business, but the record contains no evidence to support this allegation. There is some evidence in the record that the retailers did not receive orders at the warehouses. In contrast, there is no evidence showing that a sufficient number of orders were received at the warehouses and, therefore, that the Comptroller acted within her discretion in reaching its determination. Consequently, given the

17

current state of the record, the Comptroller's plea to the jurisdiction was properly denied as to appellees' claim under the UDJA that the Comptroller misapplied tax code section 321.002(a)(3).

### (3)     Retroactive reassessment of local sales tax

Appellees also seek a declaratory judgment that the Comptroller had no authority to reclaim taxes already paid to appellees and reallocate them to the City of Grand Prairie. According to appellees, no statute or rule provides the Comptroller such authority, regardless of whether the Comptroller properly interpreted and applied tax code section 321.002(a)(3) in determining that the Grand Prairie warehouses are places of business.

The Comptroller is authorized by statute to administer, collect, and enforce local sales tax imposed by a municipality. *See* Tex. Tax Code Ann. § 321.301. The Comptroller has the authority to adjust tax amounts if she finds that an amount of tax, penalty, or interest has been unlawfully or erroneously collected. *See id.* § 111.104(a). The process of adjusting the tax amount due can be initiated by the "person who directly paid the tax to this state or by the person's attorney, assignee, or other successor." *Id.* § 111.104(b); *see* 34 Tex. Admin. Code §§ 3.282(j), .325(a) (2007). These adjustments by the Comptroller may be made any time within four years from the date that the tax becomes due and payable. *See* Tex. Tax Code Ann. § 111.107(a), .201. The Comptroller may also determine that a person owes a greater amount of taxes than reported. *See, e.g., id.* §§ 111.008, .108 (West 2008).

Appellees contend that because the statute authorizing taxpayers to initiate the process of adjusting the tax amount due refers to "tax refund claims," *see id.* § 111.104(b), it is not applicable to a retailer's changing the local taxing jurisdiction to which local sales tax should

18

be allocated. Appellees reason that because no provision of the tax code expressly addresses this specific type of amendment to a retailer's tax returns, the Comptroller acted outside her legal authority in allowing such a retroactive amendment. We are not persuaded by appellees' view of the scope of the Comptroller's authority. A taxpayer has express authority to amend its tax return during the applicable four-year period in a manner that results in a refund of taxes based on the amendment. *See id.* There is no statutory limitation on what information may be amended such that a tax refund results. We consider it a reasonable interpretation for the Comptroller to determine that a taxpayer is also entitled to amend its tax return in a manner that results in additional taxes owed, and to pay those additional taxes. *See Tarrant Appraisal Dist.*, 845 S.W.2d at 823; *Farmers Tex. County Mut. Ins. Co.*, 250 S.W.3d at 536. This is precisely what has happened here. The retailers amended their tax returns to correct the location in which certain sales were consummated, and the result was a refund of tax paid to appellees and an increase in taxes owed—and, eventually, paid—to the City of Grand Prairie.

This Court, in *McLane Co. v. Strayhorn*, held that when the Comptroller has been provided a "clear grant of discretion" by statute, a claim under the UDJA seeking to compel the Comptroller to exercise that discretion in a certain manner is a suit against the State and is barred by sovereign immunity absent legislative permission. 148 S.W.3d at 650-51. Appellees contend that we should reach a different result in this case because, unlike here, the grant of discretion by the statute at issue in *McLane* explicitly contained the phrase "acceptable to the comptroller." *See id.* at 650 (quoting Tex. Tax Code Ann. § 154.051(*o*) (West 2008)). A statute need not, however, contain this precise phrase—or some variation thereof—regarding a specific issue in order for the agency, which has been charged with enforcement over the matter by statute, to have *some*

19

discretion as to that specific issue. *See Heinrich*, 284 S.W.3d at 371 (where statute leaves *no* room for discretion, suit alleging violation of that statute not barred); *Tarrant Appraisal Dist.*, 845 S.W.2d at 823 ("Construction of a statute by the administrative agency charged with its enforcement is entitled to serious consideration, so long as the construction is reasonable and does not contradict the plain language of the statute.").

The Comptroller is authorized by statute to administer, collect, and enforce local sales tax. *See* Tex. Tax Code Ann. § 321.301. She is authorized to accept and process amended sales tax returns that result in a tax refund. *See id.* § 111.104. Such amended tax returns can apply retroactively if filed within the four-year limitations period. *See id.* § 111.107(a). Therefore, we hold that the Comptroller acted within her statutory discretion in determining that the Comptroller had authority to reallocate local sales tax based on amended sales tax returns within the applicable limitations period correcting the location at which sales were consummated.

In sum, based on the Comptroller having acted within the scope of her statutory authority, the Comptroller's plea to the jurisdiction should have been granted as to appellees' UDJA claim that the Comptroller improperly interpreted tax code section 321.002(a)(3) and their UDJA claim that the Comptroller had no authority to retroactively transfer local sales tax revenues. Conversely, given the current state of record, the Comptroller's plea to the jurisdiction was properly denied as to appellees' UDJA claim that the Comptroller incorrectly determined that the retailers at issue received three or more orders at their Grand Prairie warehouses during each relevant calendar year.

20

### *APA Section 2001.038 Claim*

Appellees also seek declaratory relief under the authority of section 2001.038 of the Administrative Procedure Act. Section 2001.038 of the APA provides for a declaratory judgment action to determine the "validity or applicability of a rule . . . if it is alleged that the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff." Tex. Gov't Code Ann. § 2001.038(a). Appellees, in their pleadings, allege that the Comptroller's rule allowing retrospective reallocation of local sales tax was not properly promulgated and, therefore, is invalid.

Section 2001.038 is a grant of original jurisdiction and waives sovereign immunity. *Texas Logos, L.P. v. Texas Dep't of Transp.*, 241 S.W.3d 105, 123 (Tex. App.—Austin 2007, no pet.). Appellees contend that because an APA section 2001.038 claim is not barred by sovereign immunity, in order to grant the Comptroller's plea as to the APA claim we would be required to first delve into the claim's merits, which, appellees allege, is improper at this stage of the proceedings. *See Sefzik v. Texas Dep't of Transp.*, 267 S.W.3d 127, 134-35 (Tex. App.—Corpus Christi 2008, pet. filed). However, it is the plaintiff's responsibility to plead a cause of action upon which the trial court has jurisdiction. *See Harris County v. Sykes*, 136 S.W.3d 635, 639 (Tex. 2004). Section 2001.038 only authorizes a district court to resolve whether an administrative rule is valid or whether an administrative rule is applicable. *Friends of Canyon Lake, Inc. v. Guadalupe-Blanco River Auth.*, 96 S.W.3d 519, 529 (Tex. App.—Austin 2002, pet. denied). The Comptroller contends that appellees have failed to plead such a cause of action. Therefore, we must determine if appellees have alleged facts that affirmatively demonstrate the existence of a cause of action under APA section 2001.038. *See Miranda*, 133 S.W.3d at 226.

The Comptroller argues that because appellees have no constitutional property right at stake, they have no "legal right or privilege" that can be interfered with or impaired, and therefore, appellees' pleadings affirmatively negate the existence of jurisdiction over the APA section 2001.038 claim. However, section 2001.038 does not require that the legal right at stake be protected by the constitution. *See* Tex. Gov't Code Ann. § 2001.038(a). Appellees have a statutory right to their share of the collected sales tax. *See* Tex. Tax Code Ann. § 321.502 (comptroller to send "the municipality's share of the taxes"). This is a sufficient legal right for purposes of section 2001.038 of the APA.

Next, the Comptroller argues that there can be no validity challenge under section 2001.038 absent procedural or constitutional grounds, and that such grounds are absent here. *See City Pub. Serv. Bd. v. Public Util. Comm'n*, 96 S.W.3d 355, 359 (Tex. App.—Austin 2002, no pet.). However, this Court has also found a viable APA claim where a state agency's rules were allegedly not passed in accordance with the APA's rulemaking requirements and contained guidelines that "appear contrary to the plain wording of the statute." *Texas Alcoholic Beverage Comm'n v. Amusement & Music Operators*, 997 S.W.2d 651, 654, 658 (Tex. App.—Austin 1999, pet. dism'd w.o.j.). Appellees have raised similar allegations here.

The Comptroller also argues that the pleadings affirmatively negate the existence of jurisdiction over the section 2001.038 claim because appellees have not challenged a "rule." To the extent that no rule as defined by the APA is at issue, section 2001.038 does not provide any basis for the district court's jurisdiction over appellees' declaratory judgment action. *See Beacon Nat'l Ins. Co. v. Montemayor*, 86 S.W.3d 260, 268-69 (Tex. App.—Austin 2002, no pet.). Not every statement by an administrative agency is a rule for which the APA prescribes procedures for judicial

22

review. *Brinkley v. Texas Lottery Comm'n*, 986 S.W.2d 764, 769-71 (Tex. App.—Austin 1999, no pet.). The APA defines a "rule," in part, as a "state agency statement of general applicability." Tex. Gov't Code Ann. § 2001.003(6)(A) (West 2008). Appellees, in their pleadings, refer to the Comptroller's rule allowing retrospective reallocation of local sales tax. Appellees acknowledge that no administrative rule regarding retrospective reallocation has been promulgated, but contend that the Comptroller has issued a "statement of general applicability" as to the matter, which should be deemed a "rule" for purposes of APA section 2001.038. However, appellees have failed to allege precisely which "statement of general applicability" is at issue. In the hearing before the district court on the Comptroller's plea to the jurisdiction, appellees admitted that to date they had encountered "no rule, no official publication, nothing that we can find where the Comptroller has clearly delineated what is its policy regarding retroactive reallocation of sales tax among local jurisdictions."[9]

It appears that appellees consider the Comptroller to be obligated to produce a statement of general applicability. Regardless of the merit of this position, however, it is not the proper subject of an APA section 2001.038 claim. To attack the validity or applicability of a rule, there must first be a rule. *See* Tex. Gov't Code Ann. § 2001.038(a). Because appellees have failed to allege the existence of a rule, appellees have failed to plead a cause of action under

---

[9] Appellees indicated at oral argument that the statements being challenged under their section 2001.038 claim were the guidelines by which the Comptroller determines whether a warehouse receives three or more orders during a calendar year. However, such a claim is not in appellees' pleadings. Plaintiffs referred only to the "rule" by which the Comptroller maintains "authority to transfer Plaintiffs' tax revenues to another taxing entity," and likewise, Intervenors referred only to "detailed procedures and requirements used for the reallocation of local sales taxes."

23

section 2001.038 of the APA over which the district court has subject-matter jurisdiction. *See Beacon Nat'l Ins. Co.*, 86 S.W.3d at 268-69.

**Conclusion**

We affirm the order of the district court denying the Comptroller's plea to the jurisdiction as to appellees' claim under the UDJA that the Comptroller misapplied section 321.002(a)(3) of the tax code, specifically, in the Comptroller's determining that the warehouses at issue received three or more orders in the relevant calendar years. As to the remainder of appellees' claims, we reverse the order of the district court denying the Comptroller's plea to the jurisdiction, and dismiss those claims for lack of subject-matter jurisdiction.

_____

G. Alan Waldrop, Justice

Before Justices Patterson, Pemberton and Waldrop;
    Concurring and Dissenting Opinion by Justice Patterson

Affirmed in part; Reversed and Dismissed in part

Filed: October 2, 2009