**Reversed in part, Affirmed in part, and Remanded, and Opinion filed January 23, 2014.**



In the

# Fourteenth Court of Appeals

---

### NO. 14-13-00273-CV

---

**HOUSTON BELT & TERMINAL RAILWAY COMPANY, BNSF RAILWAY COMPANY, AND UNION PACIFIC RAILROAD COMPANY, Appellants**

**V.**

**THE CITY OF HOUSTON, TEXAS, AND DANIEL KRUEGER, IN HIS OFFICIAL CAPACITY AS DIRECTOR OF PUBLIC WORKS AND ENGINEERING, Appellees**

---

**On Appeal from the 61st District Court
Harris County, Texas
Trial Court Cause No. 2012-62909**

---

### O P I N I O N

Appellants, Houston Belt & Terminal Railway Co., BNSF Railway Co., and Union Pacific Railroad Co., (collectively, the "Railroads") present this accelerated appeal from the trial court's order partially sustaining the plea to the jurisdiction

filed by appellees, the City of Houston, Texas (the "City"), and Daniel Krueger, in his official capacity as Director of Public Works and Engineering, based on governmental immunity in a declaratory judgment action. The trial court sustained the City and Krueger's plea to the jurisdiction with regard to, and dismissed for want of jurisdiction, the Railroads' ultra vires causes of action. We reverse in part with regard to the Railroads' claims that Krueger has violated or exceeded his legal authority under chapter 47, article XIV, of the City's Code of Ordinances (the "drainage fee ordinance") by imposing drainage charges on certain of the Railroads' properties that are not "benefitted properties." We affirm in part as to the Railroads' claims that Krueger has violated or exceeded his legal authority under the drainage fee ordinance with regard to the amount of fees imposed on the Railroads' properties subject to drainage charges. We remand for proceedings consistent with this opinion.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

In April 2011, the City enacted Ordinance No. 2011-254, the drainage fee ordinance. *See* Houston, Tex., Code of Ordinances, ch. 47, art. XIV ("Code of Ordinances"). The drainage fee ordinance created a municipal drainage utility, a public utility, "[i]n the interest of public health and safety and a more efficient and economic operation of drainage facilities of the city." Code of Ordinances, § 47-803. Under the drainage fee ordinance, the City shall "establish a schedule of drainage charges against all real property in the city subject to such charges"; provide drainage "for all real property in the city on payment of drainage charges unless the property is exempt from such payment"; and "offer drainage service on nondiscriminatory, reasonable and equitable terms." *Id.* § 47-801. The drainage charges are imposed "[t]o recover the city's cost of service to provide drainage to benefitted properties" and are to be used exclusively for various expenses

2

"associated with the cost of service to provide drainage services within the service area." *Id.* §§ 47-821, 47-822(a). Drainage charges are calculated based on the specified rate (either residential or non-residential, and if residential, whether curb-and-gutter or open-ditch) per "square foot of impervious surface of a benefitted property." *Id.* § 47-822(b), (c). The drainage fee ordinance provides for various categories of exemptions from the imposition of a drainage charge. *Id.* § 47-822(f). The director of the City's department of public works and engineering "shall be responsible for the administration of this article [XIV. Municipal Drainage Utility System]." *Id.* § 47-805. The drainage fee ordinance provides that the director "shall establish and implement a system of verification and correction of drainage charges for each property subject to the drainage charges." *Id.* § 47-824(a).

In May 2011, the Railroads received notice of proposed drainage charges Krueger had determined for each of the hundreds of parcels of property that the Railroads own in the City based on each property's impervious square footage. The Railroads submitted requests for verification and correction of their initial drainage charges, specifically indicating which of their properties were not "benefitted properties" subject to charges—those not discharging stormwater run-off to the City's drainage utility system. *See id.* § 47-824(b). The Railroads also requested verification and correction of areas of their properties they claimed Krueger had incorrectly determined as impervious. *See id.* After these requests were denied, the Railroads requested an appeal. *See id.* § 47-824(e). The hearing examiner made no material changes to the Railroads' assessed drainage charges. The Railroads then appealed this decision to a three-member panel of hearing examiners. The panel upheld the hearing examiner's decision.

In October 2012, the Railroads sued both the City and Krueger in his official capacity. The Railroads sought declarations with respect to the validity of the drainage fee ordinance and, if valid, whether Krueger acted in violation of the ordinance by imposing drainage charges on their non-"benefitted properties" and in determining the amount of drainage charges imposed on their properties. The City and Krueger filed a plea to the jurisdiction based on governmental immunity. The Railroads responded in opposition.

After a non-evidentiary hearing, the trial court sustained the plea to the jurisdiction only as to the Railroads' ultra vires claims against Krueger. The Railroads moved for clarification and for an opportunity to amend their petition to cure any jurisdictional defects. The trial court denied the motion. This timely appeal followed.

## II. ANALYSIS

The parties acknowledge that the sole issue on appeal is whether the trial court erred in sustaining the City and Krueger's plea to the jurisdiction as to the ultra vires claims alleged against Krueger by the Railroads. The parties did not submit evidence with their respective plea and response; nor did the trial court hold an evidentiary hearing on the plea. The City and Krueger argue the real substance of the facts actually pleaded by the Railroads confirms that the alleged ultra vires claims are barred by governmental immunity. We conclude that the trial court erred in part.

### A. Standard of review

If a governmental unit has immunity from a pending claim, a trial court lacks subject matter jurisdiction as to that claim. *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 95 (Tex. 2012). A challenge to a trial court's subject matter

4

jurisdiction may be asserted by a plea to the jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004). We review a trial court's ruling on a plea to the jurisdiction de novo. *Id.* at 228. In a plea to the jurisdiction, a party may challenge the pleadings, the existence of jurisdictional facts, or both. *Id.* at 226–27.

When a plea to the jurisdiction challenges the pleadings, we determine if the plaintiff has alleged facts affirmatively demonstrating the court's jurisdiction. *Id.* at 226 (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)). "We construe the pleadings liberally in favor of the plaintiffs and look to the pleaders' intent." *Id.* If the pleadings do not contain sufficient facts to affirmatively demonstrate jurisdiction but do not reveal incurable defects, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend. *Id.* at 226–27. If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend. *Id.* at 227.

## B. Ultra vires claims

The Railroads have attempted to plead ultra vires claims against Krueger in his official capacity, alleging that Krueger is acting outside of his authority under the drainage fee ordinance, first, by imposing drainage charges on certain of the Railroads' properties at all and, second, by determining that the Railroads should pay approximately $3 million in drainage charges per year based on their properties' impervious surface area. They contend that Krueger exceeded his authority because their properties are not "benefitted properties," and because the "track structure" on their properties is in fact pervious. The City and Krueger argue that the Railroads merely complain of Krueger's exercise of authority and discretion, which he did not exceed, and therefore their claims are barred by

immunity.

A suit asserting that a government officer acted without legal authority or seeking to compel him to comply with statutory or constitutional provisions is an ultra vires suit and is not subject to pleas of governmental immunity. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 371–72 (Tex. 2009). Such a suit, in effect, does not seek to alter government policy; it seeks to reassert the control of and enforce existing policy of the governmental entity. *Id.* at 372. Because these suits are not considered to be suits against the governmental entity, they must be brought against the allegedly responsible government actors in their official capacities, as the Railroads have done here against Krueger. *See id.* at 373. To fall within the ultra vires exception to governmental immunity, a plaintiff may not complain about a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act. *Id.* at 372. The exception permits only prospective declaratory or injunctive relief restraining ultra vires conduct, as opposed to retroactive relief. *Id.* at 374–77 (explaining that although governmental immunity does not bar such ultra vires claims, because suit is against the governmental unit for all practical purposes, its remedies must be limited).

The parties agree that this court will need to construe the ordinance in our review of the trial court's ruling in order to determine whether the facts as pleaded demonstrate the ultra vires nature of Krueger's alleged actions.

## C. The director's authority and discretion with regard to the determination of whether a property is a "benefitted property" under the drainage fee ordinance

The City and Krueger insist that the drainage fee ordinance necessarily grants Krueger the authority and discretion to assess drainage charges on the

6

Railroads' properties after making the threshold determination as to whether the property is within the "service area" as defined in the ordinance. They note the Railroads do not claim that any of their properties otherwise qualifies for any exemption under the ordinance. The City and Krueger further contend that the ordinance provides the director with authority to determine the area of "impervious surface" of each of the Railroads' properties and with discretion regarding the method used to determine which surfaces are impervious. The City and Krueger maintain that Krueger has authority to make decisions, even "wrong ones," and that the real substance of the Railroads' complaints "is not that Krueger acted outside his authority in making them but that they disagree with his decisions." The Railroads argue that Krueger has no authority and discretion under the ordinance to "deviate from or modify the definitions [of "benefitted property" and "impervious surface"], or to apply them as he sees fit." In other words, Krueger acted without authority by disregarding the specific factually determinable definitions of "benefitted property" and "impervious surface" provided in the ordinance. Thus, the Railroads contend they have adequately alleged Krueger acted ultra vires by incorrectly imposing drainage charges on certain of their properties at all and by incorrectly determining that portions of their "benefitted properties" are "impervious surfaces" subject to charges.

In a companion case also issuing today, *City of Houston v. Little Nell Apartments, L.P.*, we were presented with and analyzed the exact same issue with regard to the authority and discretion of the director to impose a drainage charge on a property alleged to be not a "benefitted property" under the drainage fee ordinance. *See* —S.W.3d—, No. 14-12-01157-CV, 2014 WL — (Tex. App.— Houston [14th Dist.] Jan. 23, 2014, no pet. h.).

7

There, we concluded that "under the plain language of the drainage fee ordinance, a property must be a 'benefitted property' to be subjected to drainage charges." Op. at 20.[1] But we also acknowledged this is a slightly different question than whether the director has the authority, and the discretion, to impose drainage charges on a property that is not a "benefitted property" under the ordinance such that he would not be subject to ultra vires claims. *Id.* After "[c]onstruing the ordinance as a whole, and under the presumption that the enacting body chooses its wording with care, we conclude[d] the director who imposes drainage charges on properties that do not properly meet the definition of 'benefitted property' . . . has acted ultra vires—that is, he has failed to comply with or acted without legal authority under the ordinance." Op. at 24.

As in *Little Nell*, we thus cannot agree with the City and Krueger that, if, as the Railroads have pleaded, their properties do not fit within the definition of "benefitted property" because they do not make use of the City's drainage system and instead discharge directly to bayous as natural water courses not owned or controlled in part by the City or dedicated to drainage service, Krueger has the authority and discretion to choose to impose drainage charges on their properties. At this stage of the proceedings, construing the Railroads' pleadings liberally and where the trial court was not presented with any jurisdictional evidence to the contrary, we conclude that the Railroads have met their affirmative pleading requirement with regard to Krueger's alleged ultra vires actions in imposing fees

---

[1] In one additional argument presented here, the City and Krueger contend, assuming certain of the Railroads' properties drain exclusively into bayous, as the Railroads allege, that "'benefitted property' includes property discharging into a bayou" and bayous form part of the City's drainage system as a matter of fact and of law. However, the plain language of the definitions of "benefitted property" and of "drainage system" does not support this claim. *See* Code of Ordinances, § 47-802. If a particular property directly discharges into a bayou, that may meet the definition of "benefitted property" but only where that bayou "forms part of the city drainage utility system." *See id.* Thus, we cannot agree that just because the Railroads allege certain of their properties discharge directly to bayous, they are "benefitted properties."

on those properties alleged not to be "benefitted properties." *See Miranda*, 133 S.W.3d at 226. Therefore, the trial court erred to the extent it sustained the City and Krueger's plea on this claim.

## D. The director's authority and discretion with regard to the determination of "impervious surface" under the drainage fee ordinance

However, this does end our inquiry. The Railroads do not allege that all of their properties are not "benefitted properties," only that certain ones do not make use of the City's drainage system. With regard to the properties they acknowledge are "benefitted properties," they allege Krueger violated or exceeded his legal authority under the ordinance by imposing drainage changes for areas that are not "impervious surfaces." In other words, they contend portions of their properties—specifically, those consisting of track structure—do not properly meet the definition of "impervious surface" provided in the ordinance, and thus Krueger acted without legal authority in determining otherwise. The City and Krueger again insist that the Railroads merely complain of Krueger's exercise of authority and discretion granted to him under the ordinance: "authority to determine a property's impervious surfaces" and "broad discretion in deciding how to determine impervious surface." This time, however, we agree with the City and Krueger.

To determine the extent of the authority and discretion granted to the director with regard to this allegedly ultra vires action, we examine the enacting body's words in the context of the drainage fee ordinance as a whole and do not consider words or parts of the ordinance merely in isolation. *See Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 636 (Tex. 2010).[2] The

---

[2] The same rules that govern statutory construction apply to the construction of municipal ordinances. *Seawall E. Townhomes Ass'n, Inc. v. City of Galveston*, 879 S.W.2d 363, 364 (Tex. App.—Houston [14th Dist.] 1994, no writ) (citing *Mills v. Brown*, 316 S.W.2d 720, 723 (Tex.

9

amount of drainage charges to be imposed depends on the "benefitted property's" amount of "impervious surface." *See generally* Code of Ordinances, § 47-822. The ordinance defines "impervious surface" as:

> any area that has been compacted or covered such that it does not readily absorb water or does not allow water to percolate through to undisturbed underlying soil strata. Surface materials considered impervious shall include, but not be limited to, bricks, pavers, concrete, asphalt, compacted oil-dirt, compacted or decomposed shale, oyster shell, gravel, or granite, and other similar materials. Surface features utilizing such materials and considered impervious shall include, but not be limited to, decks, foundations (whether pier and beam or slab), building roofs, parking and driveway areas, sidewalks, compacted or rolled areas, paved recreation areas, swimming pools, and other features or surfaces that are built or laid on the surface of the land and have the effect of increasing, concentrating, or otherwise altering water runoff so that flows are not readily absorbed.

*Id.* § 47-802. Thus, "impervious surface" is "any area that has been compacted or covered such that it does not readily absorb water or does not allow water to percolate through to undisturbed soil strata." *Id.* The ordinance then provides some examples of "surface materials considered impervious" and of "surface features utilizing such materials and considered impervious." *Id.*

---

1958)). Our primary objective is to give effect to the enacting body's intent. *Id.*; *see TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). The most reliable expression of such intent is the literal text of the provision. *See Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 651 (Tex. 2006). We presume that the language of an ordinance was selected with care and that every word and phrase was used for a purpose. *See DeQueen*, 325 S.W.3d at 635. Where possible, we avoid treating any language as surplusage. *Spradlin v. Jim Walter Homes, Inc.*, 34 S.W.3d 578, 580 (Tex. 2000). We construe an ordinance "according to what it says, not according to what we think it should have said." *City of San Antonio v. Hartman*, 201 S.W.3d 667, 673 (Tex. 2006). If an ordinance assigns a particular meaning to a term, courts are bound by the statutory usage. *See TGS–NOPEC*, 340 S.W.3d at 439.

Drainage charges are imposed based on the applicable rate—depending on whether the land use of the "benefitted property" is residential or nonresidential and, if residential, whether the drainage system is "curb and gutter drainage or open ditch drainage"—"to each square foot of impervious surface of a benefitted property." *Id.* § 47-822(b). The drainage charges are "calculated by multiplying the appropriate rate per square foot of impervious surface as specified in the city fee schedule by the area in square feet of impervious surface on each benefitted property." *Id.* § 47-822(c). In addition, "[t]he area of impervious surface on each benefitted property shall be determined on the basis of digital map data associated with tax plats and assessment rolls or other similar reliable data as shall be determined by the director." *Id.* § 47-822(d). The director shall adjust "[c]alculation of impervious surface . . . based on approved stormwater management techniques on the benefitted property" and shall identify and describe in detail "[a]ny approved management techniques" for the public. *Id.* § 47-805. Also, "[t]he director shall on a regular basis review available data to verify the amount of impervious surface for benefitted property, and will make adjustments where appropriate to the calculations of the square footage of impervious surface for purposes of determining the drainage charge for benefitted property." *Id.* § 47-823. With regard to the system of verification, correction, and appeal of drainage charges, "the city may increase or decrease the figure for the amount of impervious surface on the property for purposes of assessing the drainage charge, and shall adjust the drainage charge accordingly" "[b]ased on documentation submitted by the user . . . and information available to the city in its files and databases." *Id.* § 47-824(b).

Thus, the ordinance grants authority with regard to the determination of "[t]he area of impervious surface on each benefitted property." *Id.* § 47-822(c).

The ordinance also provides specific authority to the director with regard to calculating, verifying, and adjusting the calculation of "impervious surface." *Id.* §§ 47-805, 47-823; *see id.* § 47-824(b) (authorizing City to increase or decrease amount of "impervious surface" and adjust drainage charge when user requests verification and correction of City's initial drainage charge).

The Railroads acknowledge Krueger's authority to determine "impervious surface," but argue that such authority "is constrained by the specific factually determinable rule set by the definition of 'impervious surface.'" The City and Krueger respond just because the ordinance defines "impervious surface" does not eliminate Krueger's ability to exercise his discretion within that authority. Thus, if the Railroads allege acts within Krueger's legal authority and discretion, their claim only seeks "to control state action" and is barred by sovereign immunity. *See Heinrich*, 284 S.W.3d at 372. Indeed, although the Railroads insist that City council intended the ordinance's definition of "impervious surface" to only describe "hard" surfaces like concrete,[3] the definition states that it applies to "any area that has been compacted or covered such that it does not readily absorb water or does not allow water to percolate through to undisturbed underlying soil strata." Code of Ordinances, § 47-802. The definition then provides a nonrestrictive list of examples of what surface materials are "considered impervious," which "shall include, but not be limited to, bricks, pavers, concrete, asphalt, compacted oil-dirt, compacted or decomposed shale, oyster shell, gravel, or granite, or other similar materials." *Id.*; *see Seawall E. Townhomes Ass'n, Inc. v. City of Galveston*, 879 S.W.2d 363, 365 (Tex. App.—Houston [14th Dist.] 1994, no writ) (construing

---

[3] In doing so, the Railroads point to certain FAQs and other purported City documents allegedly limiting the ordinance's definition of "impervious surface" to such "hard" surfaces. However, their pleadings did not cite such documents nor were such documents attached to their plea response; thus, we review the trial court's ruling based on the ordinance itself and the face of the pleadings.

definition of "amusement, commercial (outdoor)" within zoning ordinance and finding similar "including, but not limited to" language not "restrictive"). Finally, the definition provides a nonrestrictive list of what surface features utilizing such materials are "considered impervious," which "shall include, but not be limited to, decks, foundations (whether pier and beam or slab), building roofs, parking and driveway areas, sidewalks, compacted or rolled areas, paved recreation areas, swimming pools, and other features or surfaces that are built or laid on the surface of the land and have the effect of increasing, concentrating, or otherwise altering water runoff so that flows are not readily absorbed." Code of Ordinances, § 47-802; *see Seawall East*, 879 S.W.2d at 365. The plain language of the definition of "impervious surface" thus does not preclude all "room for judgment" or "room for discretion" in determining what additional "similar" surface materials and "other" surface features would meet the definition. *Cf. Heinrich*, 284 S.W.3d at 371 (ultra vires suit alleging violation of statute "leaving no room for discretion" is not barred).

Moreover, other language within the ordinance supports that the director's determination of "impervious surface" involves the exercise of discretion. For example, the director has the authority to determine the area of "impervious surface" based on digital map data associated with tax plats and assessment rolls "or other similar reliable data *as shall be determined by the director*." Code of Ordinances, § 47-822(d) (emphasis added).[4] The director thus has discretion to

---

[4] The Railroads acknowledge that section 47-822(d) provides Krueger with discretion to determine and use "other similar reliable data," but contend this discretion is not unlimited. They also contend that using Harris County Appraisal District ("HCAD") data is "preferred" as the "primary data source" and that use of aerial photography analysis equates to Krueger's rolling "dice" or throwing "darts." The ordinance, however, does not provide any express preference for HCAD data. Nor does the ordinance require that such data even be used; instead, the ordinance permits the director to determine the area of impervious surface solely on the basis of "other similar reliable data as shall be determined by the director." Code of Ordinances, § 47-

decide what constitutes "similar reliable data" and to choose to utilize it when determining the "impervious surface" area. *Id.*; *see id.* § 47-805 (director has discretion to approve stormwater management techniques for adjusting calculation of "impervious surface"); § 47-823 (director has discretion to make adjustments to calculation of "impervious surface" "where appropriate" after review of "available data"); *see also* § 47-824(b) (City "may" increase or decrease "impervious surface" amount "[b]ased on information available to the city in its files and databases"). Construing the plain language within the context of ordinance as a whole, we conclude that, with regard to determinations related to the area of "impervious surface," the enacting body intended to grant the director the ability to exercise his discretion. *See McLane Co. v. Strayhorn*, 148 S.W.3d 644, 650 (Tex. App.—Austin 2004, pet. denied) (concluding that sovereign immunity barred suit against comptroller who refused letter of credit as collateral for receiving cigarette tax stamps without prepayment because language of statute at issue "evidence[d] a clear grant of discretion" to comptroller to determine what constituted "similar types of collateral *acceptable to the comptroller*").

Construing their petition liberally, the Railroads allege Krueger reached an incorrect result—as to his classification that track structure is impervious based on analysis of aerial photography—while he was exercising his delegated authority under the drainage fee ordinance to determine "impervious surface" area. However, the ordinance provides Krueger with discretion with regard to the method of this determination, and these facts do not affirmatively demonstrate that Krueger acted outside his legal authority. We thus cannot agree the Railroads' allegations that Krueger incorrectly classified their track structure as impervious implicate ultra vires actions. In other words, because the Railroads only have

---

822(d).

alleged facts demonstrating acts within Krueger's legal authority and discretion under the ordinance, their claim seeks to control state action, and thus is barred by sovereign immunity. *See Heinrich*, 284 S.W.3d at 372 ("To fall within this *ultra vires* exception, a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority."); *McLane*, 148 S.W.3d at 650–51. Therefore, we conclude that the facts as pleaded affirmatively negate jurisdiction as to this allegedly ultra vires claim. *See Miranda*, 133 S.W.3d at 227. As such, the trial court did not err in sustaining the City and Krueger's plea to the jurisdiction without an opportunity to replead with regard to Krueger's actions in imposing drainage charges on their "benefitted properties." *See id.*

Thus, we sustain in part and overrule in part the Railroads' sole issue.[5]

### III. CONCLUSION

Accordingly, we reverse in part the trial court's order on the City and Krueger's plea to the jurisdiction as to the Railroads' claims that Krueger acted

---

[5] In addition to their arguments that they have adequately alleged ultra vires claims against Krueger, the Railroads also assert that the trial court erred in partially sustaining the plea because their claims arise from the City's proprietary, as opposed to governmental, functions. They primarily rely on the Texas Tort Claims Act ("TTCA"), which provides that "the operation and maintenance of a public utility" is a proprietary function. *See* Tex. Civ. Prac. & Rem. Code § 101.0215(b)(1) (West 2011). The Railroads do not seek to invoke the TTCA's limited waiver of governmental immunity for certain negligence or premises claims. *See id.* § 101.021. Instead, they requested declaratory relief—challenging the validity of the drainage fee ordinance under the Uniform Declaratory Judgments Act ("UDJA") and seeking to restrain Krueger's allegedly ultra vires actions. *See id.* §§ 37.001–.011. However, the UDJA "does not enlarge a trial court's jurisdiction," and except for suits challenging statutes or ordinances, the UDJA does not waive governmental entities' immunity from suit. *See Heinrich*, 284 S.W.3d at 370. Moreover, the Railroads have cited, and we have located, no case law applying any such "governmental/proprietary divide" in the governmental immunity context where the underlying claim did not arise from the municipality's alleged tortious behavior or breach of contract. Thus, we cannot agree that the City waives its governmental immunity as to Krueger's ultra vires actions simply as a function of its operation of a municipal drainage utility system.

ultra vires by imposing drainage charges on their properties that are not "benefitted properties" and affirm in part as to the Railroads' claims that Krueger acted ultra vires when determining the impervious square footage of their properties subject to drainage charges. We remand for proceedings consistent with this opinion.


/s/     Marc W. Brown
Justice


Panel consists of Justices Christopher, Donovan, and Brown.