ACCEPTED
03-14-00501-CV
4682638
THIRD COURT OF APPEALS
AUSTIN, TEXAS
3/27/2015 11:28:47 PM
JEFFREY D. KYLE
CLERK

No. 03-14-00501-CV

In the

# Third Court of Appeals

## at Austin

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
3/30/2015 4:51:00 PM
JEFFREY D. KYLE
Clerk

COUNTY OF LA SALLE,

*Appellant*,

v.

JOE WEBER, in his official capacity as Executive Director of the Texas Department of Transportation; THE TEXAS DEPARTMENT OF TRANSPORTATION; TED HOUGHTON, in his official capacity as Chairman of the Texas Transportation Commission; and JEFF AUSTIN III, JEFF MOSELEY, FRED UNDERWOOD, and VICTOR VANDERGRIFF, in their official capacities as Commissioners of the Texas Transportation Commission,

*Appellees*.

On Appeal from the 353rd District Court
of Travis County, Texas

# REPLY BRIEF

Donato D. Ramos
  Bar No. 16508000
Donato D. Ramos, Jr.
  Bar No. 24041744
LAW OFFICES OF DONATO RAMOS, PLLC
Texas Community Bank Building,
  Suite 350
6721 McPherson Road (78041)
Laredo, Texas 78045
(956) 722-9909
(956) 727-5884 fax

Don Cruse
  Bar No. 24040744
LAW OFFICE OF DON CRUSE
1108 Lavaca Street,
  Suite 110-436
Austin, Texas 78701
(512) 853-9100
(512) 870-9002 *fax*
don.cruse@texasappellate.com

# TABLE OF CONTENTS

Table of Contents..............................................................................ii

Index of Authorities........................................................................iv

Summary of the Reply .....................................................................1

Argument ...........................................................................................4

I. The *Ultra Vires* Claim Does Not Offend
   Administrative-Law Principles ...................................................4

   A. The statute doesn't give 'discretion' for this agency
      (or its officials) to disregard legislative criteria ..................4

   B. Administrative principles protect legislative decision-making,
      not state officials who disregard law. ................................6

   C. This talk of 'fact-finding' and 'extrinsic' evidence
      misapprehends what the statute asks TxDOT to do .........................9

   D. Even under administrative principles, it would be arbitrary
      and capricious for officials to disregard unambiguous rules
      or to ignore criteria set by the Legislature ......................................10

II. Statutory Interpretation ........................................................12

   A. The County's interpretation is the most coherent ..........................12

      1. That the statute doesn't give TxDOT discretion to award
         grants more broadly is an intended feature, not a bug.................12

      2. This does not require fact-finding about the truth of a
         county's application. ..................................................13

      3. Nor must counties prove up their energy production. ..................14

   B. The competing interpretations are fragmentary,
      contradictory, and unreasonable. .......................................16

      1. Weight-tolerance permits are not dispositive. ..............................16

2. Counties do not control their own eligibility for any particular funding round. ........................................................18

3. The phrase 'affected by' is not a grant of unfettered discretion and, in any event, no discretion was exercised...........20

C. Deference to agency rules ..................................................21

III. The *Ultra Vires* Claims Should Not Have Been Dismissed on a Plea. ......................................................................22

A. It is not disputed that, under the County's statutory interpretation, the record is sufficient to move forward...................23

B. Agency rules can impose additional restrictions on officials, but they cannot remove statutory limits ..........................23

IV. A Section 2001.038 Claim Is Presented. ...............................24

A. The petition challenges specific rules. ...............................25

B. The 'applicability' aspect of this challenge is proper.......................26

C. The County states a sufficient interest ............................28

V. An Injunction Is Appropriate. ..............................................30

Prayer ...........................................................................................33

Certificate of Service ..................................................................34

Certificate of Compliance..........................................................34

# Index of Authorities

**Cases**

*AEP Tex. Commer. & Indus. Retail, Ltd. v. PUC*,
  426 S.W.3d 890 (Tex. App.—Austin 2014, no pet.)............................11

*Bacon v. Tex. Hist. Comm'n*,
  411 S.W.3d 161 (Tex. App.—Austin 2013, no pet.)............................7

*Carpenter v. Hausman*,
  601 S.W.2d 88 (Tex. App.—San Antonio 1980, no writ) ....................32

*City of El Paso v. Heinrich*,
  284 S.W.3d 366 (Tex. 2009) ................................................................31

*City of El Paso v. PUC*,
  883 S.W.2d 179 (Tex. 1994) ................................................................10

*Creedmor-Maha Water Supply Corp. v. TCEQ*,
  307 S.W.3d 505 (Tex. App.—Austin 2010, no pet.)...........................6-7

*Davis v. Lubbock*,
  326 S.W.2d 699 (Tex. 1959) ..................................................................8

*ERS v. Jones*,
  58 S.W.3d 148 (Tex. App.—Austin 2001, no pet.)................................4

*Fiess v. State Farm Lloyds*,
  202 S.W.3d 744 (Tex. 2006)...........................................................21-22

*General Servs. Comm'n v. Little-Tex Insulation Co.*,
  39 S.W.3d 591 (Tex. 2001)................................................................8n.

*Gerst v. Nixon*,
  411 S.W.3d 350 (Tex. 1966) ................................................................10

*In re Nalle Plastics Family, LP*,
  40 S.W.2d 168 (Tex. 2013)...................................................................21

*McLane v. Strayhorn*,
148 S.W.3d 644 (Tex. App.—Austin 2004, pet. denied) .........................7

*PUC v. Gulf States Utilities Co.*,
809 S.W.2d 201 (Tex. 1991) ..................................................11

*PUC v. South Plains Elec. Coop.*,
635 S.W.2d 954 (Tex. App.—Austin 1982, no writ) ...........................11

*R.R. Comm'n of Tex. v. Citizens for a Safe Future and Clean Water*,
336 S.W.3d 619 (Tex. 2011) ....................................................3

*R.R. Comm'n of Tex. v. Lone Star Gas Co.*,
844 S.W.2d 679 (Tex. 1992) ..................................................23

*Southwestern Bell Telephone, LP v. Emmett*,
No. 13-0584, 2015 Tex. LEXIS 274 (Mar. 20, 2015) ...........................28

*Starr County v. Starr Indust. Servs., Inc.*,
584 S.W.2d 352 (Tex. 1979) ...............................................10-11

*Tex. Dep't of Parks & Wildlife v Miranda*,
133 S.W.3d 217 (Tex. 2004) ..................................................23

*Tex. Health Facilities Com. v. Charter Medical-Dallas, Inc.*,
665 S.W.2d 446 (Tex. 1984) ..................................................11

*Tex. Mut. Ins. Co. v. Vista Comty. Med. Ctr., LLP*,
275 S.W.3d 538 (Tex. App.—Austin 2008, pet. denied) .......................11

*United Servs. Auto Ass'n v. Brite*,
215 S.W.3d 400 (Tex. 2007) ...................................................5

**Statutes and Rules**

TEX. GOV'T CODE §2001.038..............................................3, 4, 15, 21, 24-29

TEX. R. APP. P. 24.2 .........................................................................31-32

TEX. TRANSP. CODE §222.1071 ...............................................14, 18-19, 20

TEX. TRANSP. CODE §251.018 .................................................................26

TEX. TRANSP. CODE §256.101(2) ...........................................................14

TEX. TRANSP. CODE §256.103(a)...................................4, 6, 12, 15, 18, 21

TEX. TRANSP. CODE §256.103(b) .......................................................17-18

TEX. TRANSP. CODE §256.104(a) ............................................5, 12, 14, 20

TEX. TRANSP. CODE §256.104(b)...................................................5, 8n., 14

**Administrative Code**

43 TEX. ADMIN. CODE §15.182 ......................................................2, 20, 25

43 TEX. ADMIN. CODE §15.184 ...........................................................2, 25

43 TEX. ADMIN. CODE §15.188 ......................................................2, 25, 26

## SUMMARY OF THE REPLY

When the Legislature directed TxDOT to administer this grant program, it provided criteria for what it would take to qualify. The claim here, confirmed by evidence at the hearing, is that TxDOT officials willfully ignored those legislative criteria.

Mindful of *ultra vires* principles, the charge is not that the officials made factual errors in applying these criteria. The trial court is not being asked to sort through applications. Rather, the remedy is ordering state officials to apply governing law instead of their own divergent preferences.

The broad administrative-law principles that the State Defendants discuss, such as separation of powers and how "common law" restricts review of agency discretionary decisions, are not about keeping the judicial branch out of the executive branch's business. To the contrary, the cases explain administrative discretion as protecting the small spark of legislative power that the Legislature can pass to an executive agency. When an agency is given policy-making authority, that creates a zone of discretion in which to exercise that legislative power. Naturally, that zone of discretion is bounded by statute. And keeping an agency and its officials within its zone of discretion is essential to maintaining the careful balance that the Legislature has struck. Thus, even in the pure administrative context, courts can determine that an agency acts "arbitrarily and capriciously" by

ignoring or replacing statutory criteria. Similarly, in the *ultra vires* context, courts can say whether officials are exceeding the bounds of their authority.

What gives this case an "administrative" flavor is that the agency rules are invoked to aid in the court's statutory construction. Those rules agree with the County's view that the statute limits who can receive grant funds:

> 1.　As the rules interpret the statute, there is an initial filter to determine whether a county is "eligible" and has submitted a "valid" application before it ever reaches the allocation formula. 43 TEX. ADMIN. CODE §15.184(a).
>
> 2.　The rules clarify that "eligible" counties are limited to those in areas of the state affected by increased energy production. 43 TEX. ADMIN. CODE §15.182.
>
> 3.　The rules confirm the required elements for a county to have a "valid" application, including the road-condition reports and the creation of a reinvestment zone (CETRZ). 43 TEX. ADMIN. CODE §15.188.

The officials' statutory interpretation cannot be squared with that in the agency's formal rules. If the rules are right, the officials are violating the statute. If the officials are right, then the program rules are invalid.

TxDOT does not pick a horn of that dilemma. Instead, it suggests carving a third path that bypasses both meaningful rules and judicial oversight. TxDOT reasons that asking an agency to follow its rules would unduly limit its "flexibility." *See* State Br. 26. Although formal written rules would, under this model of the world, bind neither the agency nor its

officials, TxDOT says rules nonetheless prevent *ultra vires* suits because rules "are themselves a source of legal authority" independent of statute. State Br. 12. To the extent TxDOT also contends that courts hearing an *ultra vires* claim cannot examine if the rules cited to defend officials' actions are valid, *see* State Br. 37 ("§2001.038 encompasses all claims that an administrative rule is invalid" (emphasis in original)), the combined effect would let agencies opt their officials out of oversight. But an agency cannot by rule grant its officials more power that the agency possesses, and the courts' legitimate role is to enforce the boundaries set by the Legislature.

The one thing TxDOT urges the Court not to do with its rules is the one thing that the Texas Supreme Court has approved in this context, namely, giving them "serious consideration" when construing an ambiguous statute. *R.R. Comm'n v. Citizens for a Safe Future and Clean Water*, 336 S.W.3d 619, 624-25 (Tex. 2011) (choosing that standard instead of similar federal doctrines). TxDOT hints that, not only should courts not use its rules for such an interpretation, they should perhaps refrain from resolving ambiguous statutes affecting agencies, lest there be "judicially-imposed administrative sclerosis ... by locking one view of the statute in stone." State Br. 26. TxDOT's view of agency deference would erode the rule of law, undermine the notice-giving function of rules, and render

statutes such as §2001.038 idle curiosities. If neither agencies nor their officials care about rules, why bother litigating about them?

Texas courts can interpret statutes to ensure state officials stay within the outer bounds of discretion. The County brought this *ultra vires* claim and §2001.038 claim precisely so the courts can clarify the applicable law and officials can, moving forward, behave in compliance with that law.

## ARGUMENT

### I. THE *ULTRA VIRES* CLAIM DOES NOT OFFEND ADMINISTRATIVE-LAW PRINCIPLES.

#### A. The statute doesn't give "discretion" for this agency (or its officials) to disregard legislative criteria.

The brief opens by accusing the County of "[i]gnoring the discretion granting language in the statute," which TxDOT says "gives the Department full discretion over the application requirements and process." State Br. 1. The brief ends, however, without saying where the Legislature authorizes TxDOT to ignore statutory criteria.

There is no such language. The statute tells TxDOT to "administer" the program, including making needed rules (such as setting deadlines and the like). TEX. TRANSP. CODE §256.103(a); *e.g.*, *ERS v. Jones*, 58 S.W.3d 148, 151 (Tex. App.—Austin 2001, no pet.) (rules must comply with the

4

statute's general objectives). This does not grant power to modify or disregard the substance of the statute.

When the Legislature grants power to modify substantive policy, it does so explicitly. This statute contains two examples. The first involves the statutory requirement that a county submit paperwork regarding its energy-reinvestment zone (CETRZ). The statute says that it must include "a copy of the order or resolution establishing a county energy transportation reinvestment zone in the county, *except that the department may waive the submission until the time the grant is awarded*." TEX. TRANSP. CODE §256.104(a)(2)(A) (emphasis added). The discretion for TxDOT to adjust this one requirement's timing is both narrow and explicit.

Second, the statute lets TxDOT add more requirements to the "plan" that each county must submit about its "transportation infrastructure projects to be funded." *See* TEX. TRANSP. CODE §256.104(b)(2)(D) ("a plan that… (iv) meets any other requirements imposed by the department"). It does not authorize TxDOT to ignore or modify the other criteria. To the contrary, that the Legislature made these very narrow grants of discretion confirms, by negative implication, that it did not intend to grant TxDOT unfettered discretion to modify the other statutory requirements. *United Servs. Auto Ass'n v. Brite*, 215 S.W.3d 400, 403 (Tex. 2007) (applying *expressio unius est exclusio alterius*).

The context confirms that TxDOT's discretion is qualified, not broad. The sentence is a familiar one: "The department shall develop policies and procedures to administer a grant program under this subchapter to make grants to counties for transportation infrastructure projects located in areas of the state affected by increased oil and gas production." TEX. TRANSP. CODE §256.103(a). TxDOT asks the Court to stop reading at the word "administer," treating that word as an unqualified grant of power to reset policy. But the Legislature kept writing. It qualified that authority as bound by the statutory criteria ("under this subchapter"), bound to narrowly defined terms ("transportation infrastructure projects"), and bound to the geographic scope that reflected the legislative purpose ("located in areas of the state affected by increased oil and gas production."). Power to "administer a grant program under this subchapter," *id*, is not power to ignore or rewrite this subchapter.

## B. Administrative principles protect legislative decision-making, not state officials who disregard law.

TxDOT says that this Court "has repeatedly held" that "an *ultra vires* claim is barred if it involves issues committed to an agency's discretion." State Br. 11. But the very cases cited by TxDOT confirm that, where the Legislature did not grant that discretion, *ultra vires* review is proper. *Creedmor-Maha Water Supply Corp. v. TCEQ*, 307 S.W.3d 505, 514 & 517-18

6

(Tex. App.—Austin 2010, no pet.) (no immunity when the claim alleges "facts demonstrating that the agency's action is … *ultra vires* of the agency's authority").

In *Bacon*, the Court observed that the governing statute—unlike the statute here—had no substantive criteria and "left the material features … to the agency's discretion." *Bacon v. Tex. Hist. Comm'n*, 411 S.W.3d 161, 179-80 (Tex. App.—Austin 2013, no pet.).

And in *McLane*, the "disputed provision" told the Comptroller to accept "'certificates of deposits, treasury bills, or other similar types of collateral *acceptable to the comptroller*.'" *McLane v. Strayhorn*, 148 S.W.3d 644, 647 (Tex. App.—Austin 2004, pet. denied) (emphasis in original; citation omitted). The Court held that this granted the Comptroller "authority to decide what collateral to accept … *other than* certificates of deposit, treasury bills and notes…" *Id*. at 250 (emphasis added). The Court did not say that the Comptroller had discretion to categorically reject the specifically listed items but, instead, what other items to accept. Our case is the opposite, focusing on disregard of criteria specified by the Legislature rather than some catch-all provision.

The State's discussion of administrative appeals, it acknowledges, presumes that "a matter is conferred to agency discretion." State Br. 14.

TxDOT had no discretion to disregard the statutory criteria, and complete disregard of those criteria is the essence of this *ultra vires* claim.[1]

To bolster its argument that judicial oversight is inappropriate, TxDOT summons broad principles about the separation of powers, the constitutional order, and principles of the common law that generally bar court oversight of past agency action. State Br. 1-2 & 29. It notes that "[t]he APA maintains the common law's concern about balancing the respective roles of the judicial and executive departments."[2] State Br. 30.

That framing is telling. It suggests that these doctrines are about protecting agency power rather than, as TxDOT's leading case explains, the <u>legislative</u> department's primacy in policy-making. *E.g.*, *Davis v. Lubbock*, 326 S.W.2d 699, 714 (Tex. 1959) (after observing that courts cannot second guess the Legislature on pure policy, the Court concludes that they also cannot second-guess "a similar decision *made for the Legislature*, at its special behest, by one of its agencies" (emphasis added)).

---

[1] This statute does have a narrow discretion-granting provision similar to the one in *McLane*, permitting TxDOT to require that the "plan" included with county applications have <u>additional</u> elements other than those listed. *See* TEX. TRANSP. CODE §256.104(a)(2)(b)(iv). That does not authorize TxDOT to ignore the rest of the statute.

[2] TxDOT locates this "common law" bar in *Little-Tex*. State Br. 30 (citing *General Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591 (Tex. 2001)). That case held that Chapter 2260's system for resolving certain contract claims against the State did not violate the separation of powers. *Id.* 600. *Little-Tex* did not address whether the common-law bars judicial oversight generally. To the contrary, it noted Chapter 2260 had a <u>statutory</u> bar on review. *Id.* at 599 ("expressly precluded"). There is no broader principle in *Little-Tex* that would insulate officials from an *ultra vires* suit when they disregard the Legislature's statutory criteria.

The superstructure of administrative law protects the Legislature's ability to delegate a policymaking role to agencies. An *ultra vires* claim serves the complementary goal of enforcing limits the Legislature places when it delegates power to the executive.

## C. This talk of "fact-finding" and "extrinsic" evidence misapprehends what the statute asks TxDOT to do.

Trapped inside a metaphor of an administrative appeal, the State Defendants observe that the statute does not ask them to do more fact-finding, that the courts cannot second-guess any such administrative fact-finding even if they had been asked, and that in any event the courts cannot look to "extrinsic" evidence when evaluating administrative fact findings. *See* State Br. 17 & 32-33. In effect, the State Defendants prove the point that this is no administrative appeal.

This *ultra vires* claim focuses on the legal criteria applied. The petition alleges, and the testimony at the hearing confirms, that the state officials here applied wholly different criteria than the governing law. CR266. This is not a case where officials claim to have made mistakes of fact or even of inadvertence. The officials chose to apply criteria contrary to law. In doing so, the officials stepped outside any legitimate zone of discretion.

### D. Even under administrative principles, it would be arbitrary and capricious for officials to disregard unambiguous rules or to ignore criteria set by the Legislature.

If anything, the analogy to administrative appeals confirms the need for courts to police the outer bounds of agency discretion. Asking if an official acted *ultra vires* is roughly akin to asking if an agency's order was arbitrary and capricious.

There is no discretion for an agency to disregard the criteria set by law or to substitute its own. *City of El Paso v. PUC*, 883 S.W.2d 179, 184 (Tex. 1994) ("An agency's decision is arbitrary … if the agency: (1) failed to consider a factor the legislature directs it to consider; [or] (2) considers an irrelevant factor…"); *Gerst v. Nixon,* 411 S.W.2d 350, 360 n.8 (Tex. 1966) (an agency that considers factors beyond what the statute permits exceeds its statutory mandate).

The Legislature can delegate zones of discretion to an agency, but when the agency ignores those criteria and thus "has not actually taken a look at the hard problems" identified by the Legislature, reversal and remand is appropriate. *Starr County v. Starr Indust. Servs., Inc.*, 584 S.W.2d 352, 355-56 (Tex. 1979). Requiring the agency to consider enumerated criteria also ensures that "parties [are] able to know what is expected of them in the administrative process." *Id.* When an agency strikes out on its own to consider other criteria, that notice breaks down. *Id.* Thus,

"[a]rbitrary and capricious agency action may also be found when an agency improperly bases its decision on non-statutory criteria." *Tex. Health Facilities Com. v. Charter Medical-Dallas, Inc.*, 665 S.W.2d 446, 454 (Tex. 1984); *see also PUC v. South Plains Elec. Coop.*, 635 S.W.2d 954, 957 (Tex. App.—Austin 1982, no writ) (where agency "improperly considered non-statutory standards," it abused its discretion and must redo the process).

In the administrative context, courts have also recognized that officials overstep their legal authority by violating rules as well as statutes. While an agency is given a measure of discretion about how to interpret latent ambiguities in its own formal rules, its officials must follow their plain words. Rules, after all, are construed as statutes. *Tex. Mut. Ins. Co. v. Vista Cmty. Med. Ctr., LLP*, 275 S.W.3d 538, 548 (Tex. App.—Austin 2008, pet. denied); *see also* State Br. 13 (noting that rules have the legal force of statutes). So long as rules are valid, they are legally binding upon both the public and state officials. *AEP Tex. Commer. & Indus. Retail, Ltd v. PUC*, 436 S.W.3d 890, 905-06 (Tex. App.—Austin 2014, no pet.) ("force and effect of statutes"). When an agency "fail[s] to follow the clear, unambiguous language of its own regulation, we must reverse its action as arbitrary and capricious." *PUC v. Gulf States Utilities Co.*, 809 S.W.2d 201, 207 (Tex. 1991); *Tex. Mut. Ins. Co.*, 275 S.W.3d at 548 (same).

⁎⁎

The statute represents the Legislature's policy choices, with specific criteria for applicants—such as projects being in certain "areas of the state" and having made road condition reports "for the previous year" that meet the statute's heightened substantive requirements for such reports. TEX. TRANSP. CODE §§256.103(a) & 256.104(a)(1). To the extent there might be any ambiguity, TxDOT has spoken <u>as an agency</u> through its formal rules. Even had the agency been granted some zone of policy-making "discretion" under the statute, as now urged on appeal, *see* State Br. 13, those formal rules would represent the agency's exercise of that discretion <u>as an agency</u>. Officials have no discretion to substitute their own divergent policy choices, either for the agency or the Legislature.

## II. STATUTORY INTERPRETATION

### A. The County's interpretation is the most coherent.

The State Defendants' criticisms of the County's statutory interpretation are unfounded.

#### 1. That the statute doesn't give TxDOT discretion to award grants more broadly is an intended feature, not a bug.

The State Defendants' principal complaint about the County's interpretation is that it does not give wide discretion to the agency, such as

12

is commonly conveyed by contested case or other fact-finding procedures. This statute indeed lacks that sort of discretion-granting language. *See* Part I.A., *supra*. From the <u>lack</u> of such provisions in the statute, TxDOT would infer that it has broad discretion to make policy choices about where to award grants, unfettered by oversight. *See* State Br. 13-14. That does not follow. The Conference Committee took out language that would have given the agency the kind of discretion it now covets. *See* Appellant Br. 24-26 (discussing). Removing that discretion from the final bill was no oversight. It was the bargain between the two houses.

### 2. This does not require fact-finding about the truth of a county's application

The State Defendants recast the County as demanding a fact-finding procedure. *See* State Br. 14-16. They note that the statute does not explicitly tell "the Department to investigate the truth of each application, or to engage in a fact-finding process" comparing applications to "other information" that might be "extrinsic" to the applications themselves. *See* State Br. 9, 16, 28. TxDOT says it could not possibly investigate local road conditions to "verify the contents" of the applications. *See* State Br. 16.

But no formal fact-finding procedure is needed. The law is crafted such that TxDOT can enforce the legislative criteria using the paper record that the statute requires to be assembled. The statute requires that an applicant

13

include the road-condition report made for the prior year (a comprehensive official report on road status, made under oath by county officials); it requires that these official road-condition reports include information about the causes of that observed road degradation; and it further requires that applicants submit detailed plans for road projects using a defined term ("transportation infrastructure projects") that the statute ties to road degradation from energy production. TEX. TRANSP. CODE §§256.101(2) & 256.104. The statute also describes what constitutes a valid transportation-reinvestment zone. *Id.* §§256.104(a)(2)(A) & 222.1071. The TIF grant program requires a county to submit substantive documents—the actual road-condition report, the actual documentation of the reinvestment zone, details about the plans—precisely so TxDOT can assess compliance using the applications themselves. By refusing to follow these legislative criteria, TxDOT has undermined the statute's purpose.

### 3. Nor must counties prove up their energy production.

Perhaps through the same administrative lens, the State Defendants question whether the "plain text of SB 1747 ... require[s] a county to show that it has oil and gas production within its territory." State Br. 8. The question is misplaced. There is no contention here that individual county applicants should try to prove up their level of energy production, or their

14

proximity to "areas of the state" experiencing those effects. A county's geographic location is not something about which proof is needed. And whether there is overlap with "an area of the state affected by increased production of oil and gas" is something TxDOT can see from official data.

In an ideal world, TxDOT would have offered more concrete guidance in its formal rules. It could have set out a formula or clarified the specific data series on which it intended to rely (much as it clarified the allocation formula). TxDOT has drawn the same connection before using such data, overlaying its road degradation knowledge with official data about areas of energy production. *E.g.*, 8RR43. It is unsurprising that the Legislature saw TxDOT as competent to do the same when administering this program.

That TxDOT did not include this in its rules does not strip the phrase "increased oil and gas production" from the statute. That phrase is part of the very sentence directing TxDOT to administer the program. TEX. TRANSP. CODE §256.103(a). If TxDOT suggests that its own rules should be interpreted as insufficient to the task, it raises deep questions about their validity over which the court independently has jurisdiction under Section 2001.038. *See* CR265-66 (contending that TxDOT's failure to specify the criteria for this assessment might make its rules governing the TIF grant program invalid); CR239 (trial court rejecting this argument).

## B. The competing interpretations are fragmentary, contradictory, and unreasonable.

The State Defendants take inconsistent positions about the statute, even on the threshold question of who decides eligibility:

> 1. **Does no one have power?:** TxDOT reads the four-part allocation formula to mean that the Legislature has already, implicitly but conclusively, declared that every county is eligible, *see* State Br. 18-19; or

> 2. **Do counties alone decide?:** TxDOT reads one provision to mean that, by applying, a county conclusively determines its own eligibility such that not even TxDOT can disagree, *see* State Br. 15-16; or

> 3. **Does TxDOT alone decide?:** TxDOT would read the words "affected by" to let it treat whatever counties it wishes as eligible, regardless of geography or geology, *see* State Br. 17-18.

The Court's guidance in resolving this uncertainty is sorely needed.

### 1. Weight-tolerance permits are not dispositive.

The State's principal argument is that the Legislature itself dictated that all counties are always and automatically eligible for grant funds. *See* State Br. 3-4 & 18-21. That's also what their witness told the Texas Legislature. *See* CR268-70, ¶¶38-41 (quoting this testimony).

Where is such a purportedly consequential provision located in this statute? The State Defendants would locate it in subpart (b)(1) of §256.103, one of the factors listed in the allocation formula:

> (b)(1) 20 percent according to weight tolerance permits, determined by the ratio of weight tolerance permits issued in the preceding fiscal year for the county that designated a county energy transportation reinvestment zone to the total number of weight tolerance permits issued in the state in that fiscal year, as determined by the Texas Department of Motor Vehicles;

Some context is needed to even find it. Most weight-tolerance permits are issued for specific counties or named groups of counties.[3] For convenience, a trucking company can also obtain a single permit good statewide. The State reasons that because <u>some</u> permits are issued on that basis rather than for specific counties, the Legislature must have meant to make every county eligible for funding. *See* State Br. 20.

Notably, the statute does not say to count statewide permits toward any particular county. To the contrary, it talks about "permits issued … *for the county*." TEX. TRANSP. CODE §256.103(b)(1) (emphasis added). Even

---

[3] TxDOT posted the raw data it received on a webpage devoted to this program. The table showing weight-tolerance permits is available at: http://ftp.dot.state.tx.us/pub/txdot-info/energy/sb1747/weight-tolerance-permit.pdf

This document says there were a total of 46.978 weight-tolerance permits. For each county, it shows a number for "permit selections," counting both statewide and county-specific permits. Although the document does not break out the total number of "statewide" permits, the lowest county total (3941) is, logically, a ceiling on that figure.

17

TxDOT's rules are silent on this point; the way TxDOT officials chose to count them reflected only their own judgment, not legislative command.

The conclusion TxDOT would draw—that all counties are necessarily eligible—does not follow. The statute does not say that the allocation formula in §256.103(b) says which counties can participate in the pool. Consider how TxDOT's rules interpret this provision. They describe an initial filter about whether counties are "eligible" <u>before counties would even reach</u> the allocation formula in §256.103(b). 43 Tex. Admin. Code §15.184(a) (only "eligible counties" are included in the pool). That reading is correct. The statute having an initial filter is perfectly consistent with weight-tolerance permits being part of the formula for dividing the pie proportionately among the successful applicants.

### 2. Counties do not control their own eligibility for any particular funding round.

TxDOT also suggests that, if the Legislature did not itself decide, it gave counties the final say over whether or not they are eligible for grants. *See* State Br. 17. TxDOT cites a provision describing what counties must do when forming a CETRZ. *See* Tex. Transp. Code §222.1071(b). That provision says a county's creation of a CETRZ must come "after determining that an area is affected because of oil and gas exploration and production activities and would benefit from funding under Chapter 256."

18

*Id.* TxDOT argues this shows legislative intent to have counties be the only ones who speak to this question. *See* State Br. 17.

This is a strange reading. These zones have a purpose beyond applying for grants. Counties can form a CETRZ on their own schedule. Doing so dedicates a portion of the tax base to energy-related projects, whether or not the county applies for these grants.[4] TEX. TRANSP. CODE §222.1071(i)(1)(B), -(m), -(n) (can use for local "transportation infrastructure projects", for certain state highway projects, and for certain road-utility districts). A county government might devote local taxes for such purposes even when local energy production is flat or declining.

But that does not mean that the Legislature meant for state resources to follow the same path. While counties need only determine that "an area is affected because of oil and gas," TEX. TRANSP. CODE §222.1071(b), the criteria for being eligible for TIF grants is that projects be "located in areas of the state affected by increased oil and gas production," *id.* §256.103(a). The difference is focus. By including the word "increased," the Legislature was directing scarce state funds to the areas of increased need. TxDOT's rules agree. They make the first element of "eligibility" that "a county

_____

[4] Creating a zone like this, if done with care, has other benefits related to management of local county tax rates. *E.g.*, 2RR113-14.

must … be entirely or partially in an area affected by increased oil and gas production." 43 TEX. ADMIN. CODE §15.182.

Nor does this argument fit the timelines permitted by statute. Although counties may form zones at any time, the statute contemplates that they might (with TxDOT's permission) defer that until <u>after</u> grant applications are processed. *See* TEX. TRANSP. CODE §256.104(a)(2)(A). The statute thus contemplates that TxDOT can make grant-eligibility decisions before counties form zones—and therefore without the benefit of any implicit county finding under §222.1071(b).

### 3. The phrase "affected by" is not a grant of unfettered discretion and, in any event, no discretion was exercised.

On appeal, TxDOT suggests that the phrase "affected by" is so amorphous that it would, hypothetically, have permitted the agency to declare every county eligible because it is at least theoretically possible that some local road might have been traversed by some oil or gas truck. *See* State Br. 20-21. In an *ultra vires* suit, whether officials disregarded criteria is a fact question. There is no evidence that TxDOT officials made such an analysis. To the contrary, the claim is that they made no inquiry into geographic links, instead treating every county as automatically eligible; their testimony confirms it. 8RR24 (they in fact used "the [allocation]

20

formula that was stipulated in the statute," which the witness agrees, "results in every county in the state that applies, receiving funds").

Had TxDOT issued a rule to that effect, it would have been open to attack under §2001.038 for invalidity, both for undermining the statute's purpose and for resting on a construction that renders so much of the scheme—and even the sentence in which those words appear—pointless. The statute contemplates that there is *some* geographic limit, describing "projects *located in areas* of the state affected by *increased* oil and gas production." TEX. TRANSP. CODE §256.103(a) (emphasis added). The geographic focus is placed not on county borders but where "projects" are "located," and whether those "projects" are in "areas of the state affected by increased production of oil and gas" rather than merely affected by some baseline level of production. *Id.* Letting the phrase "affected by" rob the meaning from the sentence's more concrete words does violence to legislative purpose. *In re Nalle Plastics Family, LP*, 406 S.W.3d 168, 173-74 (Tex. 2013) (construing word narrowly to avoid rendering others surplus).

## C. Deference to agency rules

The State Defendants are understandably vexed that their formal rules are being used against them. In Texas, agency deference attaches to fixed, formal agency rules, not the vacillating views of officials. *Fiess v. State Farm*

*Lloyds*, 202 S.W.3d 744, 747 (Tex. 2006). They say that deference against their wishes would "frustrate the purpose of deference by locking in one view of the statute," citing "flexibility" as "the heart of the deference doctrine." State Br. 26. But there is no legitimate tension here. Courts "lock[] in one view of the statute" by resolving statutory ambiguities all the time. Until that definitive answer, if an agency desires "flexibility," it can always adopt new formal rules. While the agency is correct that it is not judicially estopped from advancing whatever statutory construction <u>arguments</u> it wishes in court, arguments have consequences. The logical consequence of its position here may be that its own rules are invalid.

Either an agency's formal rules are a meaningful guide to help resolve ambiguities in a statute, or they are not. If they are, then they must guide the court even when agency officials later deem them inconvenient.

## III. THE *ULTRA VIRES* CLAIMS SHOULD NOT HAVE BEEN DISMISSED ON A PLEA.

The essence of this *ultra vires* claim is that the state officials refused to apply the legislative criteria to filter applications at the outset, <u>before</u> applying the allocation formula. As they readily admitted below, they applied no initial filter. 8RR24.

## A.  It is not disputed that, under the County's statutory interpretation, the record is sufficient to move forward.

If the Court accepts the County's statutory construction, the plea should be denied if the State Defendants' alleged conduct exceeds those bounds. The pleadings allege that it does. *See* CR264-71. To the extent this is a factual question, the evidence developed at the hearing far exceeds the minimum threshold of proof to survive a plea on the question. *Tex. Dep't of Parks & Wildlife v Miranda,* 133 S.W.3d 217, 227-28 (Tex. 2004) (summary-judgment standards and burdens apply).

## B.  Agency rules can impose additional restrictions on officials, but they cannot remove statutory limits

TxDOT says "there cannot be an *ultra vires* claim if a defendant entity has complied with its own administrative rules, because those rules are themselves a source of legal authority." State Br. 12. But rules are not an independent source of authority. Rules follow from statutes; if rules exceed statutory bounds, the rules are invalid. *Railroad Comm'n of Texas v. Lone Star Gas Co.*, 844 S.W.2d 679, 685 (Tex. 1992).

TxDOT suggests that the existence of rules makes this *ultra vires* claim a covert administrative appeal. The State says that because <u>some</u> rules involve contested cases, <u>any</u> official action that "do[es] not contravene an administrative rule" becomes about the rules and thus "not a proper *ultra*

23

*vires* suit." State Br. 14. The premise is wrong, because the Legislature is free to grant agencies a smaller zone of discretion, as it did here. And TxDOT makes an analytical leap to conclude that <u>only</u> rules and not statutes bind state officials. State officials are bound by both constraints.

A question that TxDOT does not address is whether an official who violates an unambiguous aspect of agency rules acts *ultra vires*. It hints that such a claim might be proper. State Br. 14 ("if a defendant's actions do not contravene an administrative rule, the suit is … not a proper *ultra vires* claim"). The formal written rules adopted by TxDOT present the most reasonable interpretation of the statute. As such, whether to label this a violation of statute or rule is immaterial. The officials are violating both. But even if TxDOT's wish that rules <u>displace</u> statutes were entertained, the outcome is the same. Its officials are still acting outside controlling law.

## IV. A SECTION 2001.038 CLAIM IS PRESENTED.

The State Defendants say that "the proper forum" for complaints should have been a Section 2001.038 claim. *See* State Br. 35. In defending their narrow view of *ultra vires*, the officials say their view "does not leave the County without a forum" because it could, instead, seek review under §2001.038. *See also* State Br. 9 & 27. This pleading is sufficient to do so.

24

## A. The petition challenges specific rules

TxDOT says that the petition "does not identify a particular rule; rather, it conditionally seeks §2001.038 relief regarding 'any TxDOT rules … to the extent that they depart from the statute.'" State Br. 37 (citing CR272).[5] The excerpt it quotes is from a closing summary. The body of the pleading does specify rules involved in the challenge:

- Rule 15.184 describes an initial filter, specifying that only "eligible" counties (a term defined in Rule 15.182) who submit "valid" applications (as defined by Rule 15.188) will enter the grant pool. *See* CR263-65, ¶22 & ¶28. If TxDOT officials believed this rule to be applicable, this dispute might never have arisen. Instead, TxDOT officials have stated that they believe controlling law prohibits this kind of filter—calling into question both the rule's applicability and its validity. *See* CR269-70, ¶¶41-42 (discussing this testimony); *see also* CR265, ¶28 (noting that, if the rule is interpreted not to include this substantive filter, it contravenes the grant of authority to TxDOT).

- Rule 15.182 defines which counties are "eligible," with the first listed element being that *See* CR263 ¶22 & CR266 ¶29. The petition discusses whether this rule is applicable or, if now interpreted to mean something other than a filter focusing funds on certain parts of the state, is invalid. *See* CR266, ¶¶29-30.

---

[5] The live petition begins at CR257. The fact statement in the State's brief cites to a previous version of the pleading, but the differences are not material.

- Rule 15.188 enumerates requirements for a "valid" application, including that a county attach "a road condition report described by Transportation Code, §251.018 made by the county for the preceding year." (Section 251.018 was added to the Transportation Code by SB1747 and instructs counties to specify the causes of road degradation in these official reports.) The petition discusses whether this rule is applicable or, if now interpreted to permit funds to go to counties who failed to comply, is invalid. *See* CR263 ¶22 & CR266 ¶¶29-30.

The uncertainty surrounding these rules permeates the whole case and, if anything, is heightened by the ongoing uncertainty surrounding the statute. *See* CR271-72, ¶46 (asking for a declaration to remove this uncertainty); *see also* CR266 ¶30 & CR269-70 ¶¶41-42. As the case has proceeded, even TxDOT has advanced multiple, competing views—some of which contradict its own rules. This states a §2001.038 claim, and the declaration sought can resolve this uncertainty.

## B. The "applicability" aspect of this challenge is proper.

TxDOT points to a distinction between "applicability" and "that rule's application." *See* State Br. 31. The distinction is somewhat elusive. Section 2001.038 actually uses *both* of those words, explaining that declaratory relief is available "if it is alleged that the rule *or its threatened*

*application*" interferes with the plaintiff's legal rights. TEX. GOV'T CODE §2001.038(a) (emphasis added).

In other contexts, a declaratory judgment is used to interpret texts. A court's role in regard to agency rules is slightly different. An agency has wide latitude to interpret its own agency rules (unlike the more limited deference its views are sometimes accorded for statutory questions). Thus, a court cannot simply step in to resolve ambiguous rules. But as §2001.038 recognizes, courts can say if a rule (which the agency has liberty to interpret) is "valid" under the statute (which only courts can definitively interpret). And the court can also say whether the rule is "applicable."

Both TxDOT and the County agree that there is some line to be drawn between proper and improper "applicability" challenges. The power to speak to a rule's "applicability" should be informed by the context of overseeing an agency. At one extreme, if a party is merely dissatisfied with the fact-intensive resolution of a hearing conducted under undisputed rules, second-guessing how the rules are applied is not the proper subject of declaratory relief. But if an agency applies wholly the wrong legal framework—if it does not treat its own rule as "applicable"—then a challenge is proper. That's because, just as state officials lack the power to disregard the criteria set by the Legislature, an agency exceeds its power by disregarding its own unambiguous rules.

27

This accords with how the Texas Supreme Court has viewed more conventional declaratory judgments. A declaratory judgment that certain officials acted *ultra vires* in repudiating the requirements imposed under controlling law has been held not barred by governmental immunity. *Southwestern Bell Telephone, LP v. Emmett*, No. 13-0584, 2015 Tex. LEXIS 274, at *20-21 (Tex. Mar. 20, 2015) (declaratory judgment against city commissioners was not barred in this situation, even though the practical effect would be to compel prospective payments). The same result should hold when an agency exceeds the law by disregarding the criteria set out in its formal rules. That "applicability" challenge is perfectly consistent with the judicial role. An agency has no discretion to disregard its own formal rules. *See* Part I, *supra*. The courts have a tool, through §2001.038, to declare the boundaries of such a rule. The declaration can speak to the "applicability" of a rule as a rule, leaving precise fact-by-fact matters to the discretion of the agency.

## C. The County states a sufficient interest.

TxDOT suggests that the "petition does not articulate a 'right or privilege.'" State Br. 38. It acknowledges that the County does invoke a statutory right to payment, but says that is "not tied to the actual legal

complaint" in the case, "all of which have to do with the acceptance of applications." State Br. 38.

TxDOT seems to suggest that only counties <u>disapproved</u> for the grant pool might have standing to seek a declaration. State Br. 38-39. But as TxDOT's trial witness agreed, the zero-sum nature of this grant pool means that each incremental county reduces the allocation to each other county. 2RR23. Thus, an approved county suffers a mathematically precise degree of injury when ineligible counties are included in the pool. It is, economically, the same as if part of a county's own grant request had been wrongly disapproved. The County has a sufficient stake to seek a declaration about the validity or applicability of these rules.

If §2001.038 is to be the right "forum" for these complaints, *see* State Br. 9, 27, 35, the Court should be very reluctant to embrace TxDOT's suggestion that only a county denied funds can bring a claim. Today, there are no such counties <u>precisely because</u> TxDOT officials disregarded applicable agency rules and controlling law. So long as they adhere to the same path, the judiciary could never speak to these rules.

If anything, TxDOT seems more concerned with whether a §2001.038 declaration would speak in the present tense. TxDOT acknowledges, as it must, that the County can seek "a declaration that the rule is inconsistent with the text of SB 1747, the result of which would control future

allocations." State Br. 39. The declaration the County seeks is certainly broad enough to cover future funding rounds under this statute. It would also, naturally, resolve the present uncertainty about whether the rules governing the funding round now underway are valid or applicable.

## V. AN INJUNCTION IS APPROPRIATE.

The County is not requesting any court to sort applications into categories. Rather than any "separate judicial determination" of the specific outcome, *see* State Br. 17, the County asks for injunctive relief forcing TxDOT officials to follow the law in their own administration of this program.

Quite obviously, holding a new grant round to deal with unspent funds is not retroactive relief. The State Defendants say that "[t]he allocation has already occurred, and disbursement of the $225 million … *is mandated by it*" State Br. 29 (emphasis added). But under TxDOT's own design this program proceeds in small steps, thereby preserving for itself a measure of control. Before a county begins each individual project, it must obtain TxDOT's approval on a discrete form; without that incremental approval, a county cannot receive reimbursement. *See* Appellant Br. 31-32 (discussing this process). TxDOT is not "mandated" to keep approving new individual projects as each county requests them. Immunity would not be offended by enjoining that future act.

The County suggests that an appellate injunction focused on this specific, forward-looking decision by TxDOT offers a graceful way to freeze future unauthorized state spending without undue interruption of projects underway. If TxDOT officials are enjoined from these approvals, spending will stop, and funds not already expended in violation of the statute can ultimately be disbursed consistent with Texas law. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 & 376 (Tex. 2009) (immunity does not bar relief that effectively compels future payments consistent with law).

With regard to an appellate injunction, the State Defendants protest that it "improperly seeks the judgment the County wants, rather than preserving a legal right the County already has." State Br. 42. The relief sought through an appellate injunction is merely to stop ongoing spending, protecting the ability of Texas courts to later order meaningful relief ensuring funds are distributed consistent with Texas law.

The State Defendants also muddy the water by hinting, in a footnote, that some enormously large bond might be required for an appellate injunction. *See* State Br. 42n.19 ("it remains the case that the appellant is required to assume the financial risk inherent in leaving the judgment in place, *see* TEX. R. APP. P. 24.2(a)(3). It is unclear that a single plaintiff could necessarily propose a sufficient bond to address the financial problems inherent in delaying a state wide road-funding measure through

31

the entire appellate process."). The cited rule discusses supersedeas; there is no merits judgment here. Nor does Rule 24.2 control appellate injunctions, which protect jurisdiction. *Carpenter v. Hausman*, 601 S.W.2d 88, 89 (Tex. App.—San Antonio 1980, no writ) (statute does not require bond for appellate injunction). Rule 24.2 also discusses "loss or damage" to "the judgment creditor." TEX. R. APP. P. 24.2(a)(3). It strains the analogy to treat TxDOT or its officials as "judgment creditors" who might suffer "loss or damage." And there is no suggestion that TxDOT has a financial stake, either way, in <u>which</u> counties receive funds. Any "loss or damage" to TxDOT from freezing this program for the remaining duration of the appeal is both speculative and far below the magnitude hinted by this ominous footnote.

## PRAYER

The Court should reverse the trial court's judgment of dismissal and remand for merits proceedings on these claims. The Court should also issue a writ of injunction to protect jurisdiction over this controversy until the appellate mandate returns it to the trial court.

Respectfully submitted,

/s/ Don Cruse

Don Cruse
  SBN 24040744
LAW OFFICE OF DON CRUSE
1108 Lavaca St. #110-436
Austin, Texas 78701
(512) 853-9100
(512) 870-9002 *fax*
*don.cruse@texasappellate.com*

Donato D. Ramos
  Bar No. 16508000
  *mrodriguez@ddrlex.com*
Donato D. Ramos, Jr.
  Bar No. 24041744
  *donatoramosjr@ddrlex.com*
LAW OFFICES OF DONATO RAMOS, PLLC
Texas Community Bank Building
  Suite 350
6721 McPherson Road (78041)
Laredo, Texas 78045
(956) 722-9909
(956) 727-5884 *fax*

33

## CERTIFICATE OF SERVICE

I certify that on March 27, 2014, this **Reply Brief** was served on

counsel under Texas Rule of Appellate Procedure 9.5(b):

Kristofer D. Monson
  Assistant Solicitor General
Susan Desmarais Bonnen
  Assistant Attorney General
Office of the Attorney General
P.O. Box 12548
Austin, Texas  78711-2548
*kristofer.monson@texasattorneygeneral.gov*
*susan.bonnen@texasattorneygeneral.gov*

COUNSEL FOR APPELLEES

/s/ Don Cruse

_____
Don Cruse

## CERTIFICATE OF COMPLIANCE

This brief complies with Texas Rules of Appellate Procedure 9.4

because the sections covered by the rule contain no more than 7324 words.

The font used in the body of the brief is no smaller than 14 points, and the

font used in the footnotes is no smaller than 12 points.

/s/ Don Cruse

_____
Don Cruse